THE STATE, Appellant, v. R. M. DIXON.—73 S. W. (2d) 385.

Court en Banc, June 15, 1934.

*Roy McKittrick,* Attorney-General, and *Wm. Orr Sawyers,* Assistant Attorney-General, for appellant.

*D. D. McDonald* and *Sam Hargus* for Public Service Commission.

. *Thomas J. Cole* for respondent.

WESTHUES, C.—On June 24, 1932, the Prosecuting Attorney of Jefferson County, Missouri, filed an information in the circuit court of that county charging respondent with the violation of a traffic rule promulgated by the Public Service Commission. Respondent filed a demurrer to the information, the trial court sustained it and the State appealed. Respondent's contention, which the trial court sustained, was that the provisions of Sections 5374 and 5275, Laws 1931, page 314, so far as those sections authorized a conviction for the violation of an order or rule of the Public Serv-

ice Commission, were unconstitutional and void. The sections read as follows:

"Sec. 5274. The commission, in the exercise of the authority by this act vested in it, to license, supervise and regulate all motor carriers or contract haulers shall promulgate and mail or deliver to each holder of a certificate of convenience and necessity, interstate permit or contract hauler's permit hereunder, such safety rules and regulations as is may deem necessary to govern and control the operation of motor carriers or contract haulers over and along the public highways of this State, and the equipment to be used. Any such safety rules promulgated, in addition to any others deemed necessary by the commission, shall include the following: (a) Every motor vehicle and all parts thereof shall be maintained in a safe and sanitary condition at all times. (b) Every driver employed by motor carriers or contract haulers shall be at least twenty-one years of age, of good moral character, and shall be fully competent to operate the motor vehicle under his charge. (c) Accidents arising from or in connection with the operation of motor carriers or contract haulers shall be reported to the commission in such detail and in such manner as the commission may require. (d) The commission shall require and every motor carrier or contract hauler shall have attached to each unit or vehicle such distinctive marking as may be adopted by the commission. (e) No vehicle coming within the provisions of this act shall be operated at a speed in excess of forty (40) miles per hour.

"Sec. 5275. Every owner, officer, agent, or employee of any motor carrier, contract hauler, and every other person, who violates or fails to comply with or who procures, aids or abets in the violation of any provision of this act, or who fails to obey, observe or comply with any order, decision, rule or regulation, direction, demand or requirement of the commission, and who procures, aids or abets any corporation or person in his failure to obey, observe or comply with any such order, decision, rule, direction, demand or regulation thereof shall be guilty of a misdemeanor and punishable by a fine not exceeding one thousand dollars or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment."

General Order No. 27, Rule No. 56, the violation of which respondent was charged with in the information, reads as follows:

"'Red torches or flags for Stalled Vehicles.—No driver of a motor vehicle shall permit the vehicle to remain at a stop upon the pavement or traveled portion of the road. If the vehicle cannot be moved from the pavement, it shall be the duty of the driver of said vehicle, to place a torch or red light, if at night, or a red flag, if by day, at least two hundred feet in front of the car upon the pavement or traveled portion of the road, and another torch or flag, as the

case may be, two hundred feet at the rear of the car upon the pavement or traveled portion of the road, which lights or flag, as the case may be, shall be maintained until the operator or driver removes the vehicle clear of the pavement or traveled portion of the route or resumes his trip.' "

Respondent has filed no brief in this court. In the demurrer filed in the circuit court he states that the information charges no offense "because said information attempts to charge as a crime a violation of a rule of the Public Service Commission of Missouri and defendant states that the Public Service Commission is not a law-making body and incapable of making laws or having the right to make laws delegated to it and that the General Assembly of the State of Missouri has no lawful power to delegate to the Public Service Commission the right to enact laws, and that said rule of the Public Service Commission and this attempted enforcement thereof is null and void and of no force and effect and is in violation of Article III, and Sections 1, 24 and 25 of Article IV of the Constitution of Missouri and is in violation of Section 1 of Article XIV of the Constitution of the United States."

We are of the opinion that this contention of respondent is untenable. Without a discussion of the point or citation of authority we may assume and begin with the proposition that the Legislature had the power and authority to establish a commission for the purpose of regulating the public utilities of the State and also for the purpose of regulating the transportation for hire by bus and trucks of passengers and freight. The Legislature, when it enacted the law granting to the Public Service Commission the power to regulate the transportation for hire of passengers and freight over the highways of the State, bestowed upon the commission full power to regulate that business. For the commission or any other body to effectively and efficiently regulate and supervise commerce of this nature it must necessarily possess the power to make certain rules, orders and regulations from time to time as the nature of the business demands. The Legislature, by the enactment of Article 8, Chapter 33, Laws 1931, page 304 (9 Mo. Stat. Ann., p. 6679), fully authorized the commission in this regard.

It is settled law that the highways are built primarily for the convenience of the citizens of the State. The transportation for hire of passengers and freight may be prohibited entirely, or the right may be granted with such restrictions as the State may deem necessary to impose. [Schwartzman Service, Inc., v. Stahl, 60 Fed. (2d) 1034; Gilmer v. Public Utilities Commission, 247 Pac. (Utah) 284; In re James, 132 Atl. (Vt.) 40; Florida Motor Lines v. State Ry. Commission, 132 So. (Fla.) 851.]

By Section 5274, supra, the commission was authorized to make such safety rules and regulations as it deemed necessary to govern

and control the operation of motor carriers and contract haulers over and along the public highways of this State and the equipment to be used. Rule No. 56, copied above, the bone of contention in this case, is certainly not unreasonable. It cannot be disputed that a truck or bus standing on the traveling portion of our concrete highways at night without warning signals is highly dangerous to the traveling public. The commission would have been derelict in its duty had it not required some safety measures in this regard. The Public Service Commission followed the mandate of the statute and acted within the scope of its authority when it promulgated General Order 27, Rule 56, supra. It will be noted that the Public Service Commission has not prescribed a penalty for the violation of any of its orders or rules. Neither has it declared the violation thereof to be a crime. It remained strictly within the field authorized by the Legislature. That the commission has the power to enact rules cannot be denied. The Federal Interstate Commerce Commission and the Public Service Commissions and other commissions of the various states have like powers and have been sustained. The Legislature, therefore, had the right to authorize the commission to make such rules and regulations as were necessary for the safety of the traveling public.

This question alone remains, did the Legislature have the authority to declare the violation of a rule of the commission to be a crime? It must be kept in mind that the states of our Union are sovereign states. That is, they have inherent power and their Legislatures can pass any law which they may deem necessary for the welfare of the people and which is not prohibited by State or Federal Constitutions. In 51 Corpus Juris, page 32, section 7, we read:

"A constitutional provision authorizing the Legislature to create a public utility commission is merely a declaration or recognition of the Legislature's inherent authority, and not a grant or limitation of power, and so the rule of exclusion of things not expressed does not apply."

The Legislature in this case, and not the Public Service Commission, has declared that a violation of a safety rule promulgated by the Public Service Commission shall constitute a misdemeanor. The Legislature, not the Public Service Commission, has prescribed what penalty shall be imposed in case of a conviction of that offense. This identical question was before the Supreme Court of Massachusetts in the case of Brodbine v. Revere, 182 Mass. 598. In that case a statute of the State created a park commission with authority to "make rules and regulations for the government and use of the roadways or boulevards under its care." The statute also made the violation of any such rules a misdemeanor. The contention was there made, as here, that the statute was unconstitutional as a delegation of legislative power. The court in denying this contention said in part:

"There is also strong ground for the contention that the quoted language of the statute simply leaves to the board the administration of details which the Legislature cannot well determine for itself, and which it may therefore leave to the determination of a subordinate tribunal, and that the substance of the legislation is found in that part of the statute which prescribes punishment for disregard of the regulations so determined."

Our statute is similar in that the Public Service Commission was created as an administrative body with authority to regulate public utilities of this State as well as the transportation for hire of passengers and freight over the highways. It is an elaborate system covering the entire field of regulation. The Legislature, however, has kept to itself, and properly so, the power to prescribe what acts shall constitute a crime and what punishment may be assessed in case of a conviction. The Legislature has deemed it proper and necessary, in order to give force and effect to the orders, rules and regulations promulgated by the commission, to say that a violation thereof shall be a misdemeanor.

The Supreme Court of the United States has also spoken on this subject in the case of United States v. Grimaud, 220 U. S. 506. In that case Congress had by an act established forest reservations. Their use for grazing and other lawful purposes to be subject to rules and regulations established by the Secretary of Agriculture. The violation of any such rules was made a crime. Grimaud was indicted for grazing sheep on a reservation in violation of a rule promulgated by the Secretary of Agriculture. A demurrer filed by the defendant was sustained. On appeal to the Supreme Court the ruling of the lower court was first affirmed by a divided court. The case was then restored to the docket, reargued and the court, by a unanimous opinion, reversed the ruling of the lower court. The precise questions raised in the case at bar were there decided. It was held that Congress had the power to authorize an administrative body to make certain rules and regulations; that in so doing Congress had not delegated any legislative authority. The court said in part:

"From the beginning of the Government various acts have been passed conferring upon executive officers power to make rules and regulations—not for the government of their departments, but for administering the laws which did govern. None of these statutes could confer legislative power. But when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, the violation of which could be punished by fine or imprisonment fixed by Congress, or by penalties fixed by Congress or measured by the injury done. . . .

"That 'Congress cannot delegate legislative power (to the Presi-

dent) is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution.' [Field v. Clark, 143 U. S. 649, 692.] But the authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense.''

So in the case at bar, the State Legislature did not delegate to the Public Service Commission any legislative authority, neither did the commission exercise such authority when it enacted certain safety rules to be observed by the operators of trucks and busses. It was the Legislature that enacted the law declaring the violations of these rules to be misdemeanors and prescribed the penalties to be inflicted. With these matters the Public Service Commission, under the law, had and has nothing to do. It follows that the trial court was in error when it sustained respondent's demurrer to the information.

The judgment of the trial court will, therefore, be reversed and the cause remanded for trial. It is so ordered.

PER CURIAM:—The foregoing opinion by WESTHUES, C., in Division Two is adopted as the opinion of the Court en Banc. All concur.