STATE ex rel. Denise WILLIAMS,
Plaintiff,

v.

Honorable William J. MARSH, Judge,
16th Judicial Circuit, Defendant.

Denise WILLIAMS, Appellant,

v.

Edward M. WILLIAMS, Respondent.

Nos. 62765, 62762.

Supreme Court of Missouri,
En Banc.

Jan. 12, 1982.

Sherrill L. Rosen and Marcia K. Walsh, Legal Aid of Western Mo., Kansas City, for relator; Phyllis Gelman, New York City, of counsel.

John E. Turner, Kansas City, for respondent.

Michael A. Wolff and Jesse A. Goldner, Nina Balsam, John Ashcroft, Atty. Gen., Simon Tonkin, Asst. Atty. Gen., St. Louis, for amicus curiae.

HIGGINS, Judge.

Denise Williams petitions this court for a writ of mandamus to compel the trial court to issue an order of protection, an order restraining her husband from entering her dwelling and a temporary order of custody as authorized by The Adult Abuse Act, §§ 455.010–.085, RSMo Supp.1980. In a separate action she appeals the trial court's dismissal of her petition filed under Chapter 455, RSMo Supp.1980. The appeal was consolidated with the mandamus action because both present the same issues concerning the trial court's determination that

Chapter 455, RSMo Supp.1980 violates a number of provisions of the Missouri and United States Constitutions. The preliminary writ is made peremptory; the judgment of dismissal is reversed, and the cause is remanded for further proceedings consistent with the writ herein issued.

After a hearing on plaintiff's petition for an *ex parte* order of protection, the trial court found: plaintiff, Denise Williams, and respondent, Edward M. Williams were married; one child was born of the marriage; the couple had been living separately for approximately five months prior to the hearing, plaintiff having custody of the child; respondent's home address was unknown although his place of employment was known[1] and his estimated wages were $1,000 per month; during the separation respondent provided no support or maintenance to plaintiff or the child with the exception of a small amount of clothing for the child; plaintiff leased or rented her residence individually; on November 13, 1980, and on numerous previous occasions, respondent (a 230 lbs., former Golden Gloves boxer) "intentionally, knowingly and wilfully beat petitioner . . . causing . . . serious physical injury . . . requiring peti-

tioner to be hospitalized . . ." for 12 days. The court concluded: respondent was a former adult household member whose actions constituted abuse; he had "purposely placed petitioner in apprehension of immediate physical injury; and thus plaintiff had "shown an unqualified right to the temporary relief available under §§ 455.035 and 455.045."

The court dismissed the petition because it held the Adult Abuse Act, in general and specifically §§ 455.035, .045 and .085, RSMo Supp.1980 unconstitutional, and thus unenforceable.

The Adult Abuse Act, S.B. 524, (codified at §§ 455.010 to 455.085, RSMo Supp.1980) was adopted by the Missouri Legislature on June 13, 1980, and became effective August 13, 1980. It was adopted by the Missouri Legislature as a result of an increased awareness nationally of the prevalence of domestic violence and of the need to protect the victims of that violence.[2] It is part of a nationwide trend to legislate in this area.[3] Existing remedies such as peace bonds, regular criminal process, and tort law have proved to be less than adequate in aiding the victims of abuse and in preventing further abuse.[4]

---

1. All attempts to notify respondent husband of this appeal have failed; communication by mail sent to him at his alleged place of employment has been returned.

2. *See*, e.g., Domestic Violence and Legislation with Respect to Domestic Violence: Hearings Before the Subcommittee on Child and Human Development, 95th Cong., 2d Sess. (1978) (hereinafter cited as Domestic Violence Hearings); D. Martin, Battered Wives (1976); M. Straus, R. Gelles & S. Steinmetz, Behind Closed Doors (1980); Buzawa & Buzawa, Legislative Responses to the Problem of Domestic Violence in Michigan, 25 Wayne L.Rev. 859 (1979); Freeman, Le Vice Anglais? Wife-Battering in English and American Law, 11 Fam.L.Q. 199 (1977); Gayford, Wife-Battering: A Preliminary Survey of 100 Cases, 1 Brit.Med.J. 194 (1975); Gelles, Abused Wives: Why Do They Stay, 38 J. Marr. & Fam. 659 (1976); Taub, Ex Parte Proceedings in Domestic Violence Situations: Alternative Frameworks for Constitutional Scrutiny, 9 Hofstra L.Rev. 95 (1980); Comment, Spouse Abuse: A Novel Remedy for a Historic Problem, 84 Dick.L.Rev. 147 (1979); Comment, Wife Beating: Law and Society Confront the Castle Door, 15 Conz.L.Rev. 171

(1979); Note, The Battered Wife's Dilemma: To Kill or Be Killed, 32 Hastings L.J. 895 (1980).

3. *E.g.*, Alaska Stat. §§ 09.55.600–640 (Cum. Supp.1980); Haw.Rev.Stat. §§ 585–1 to –4 (Supp.1980); Ill.Ann.Stat. ch. 69, § 25 (Smith-Hurd Cum.Supp.1981–1982); Iowa § 236.1–11 (Cum.Supp.1980–1981); Mass.Ann.Laws ch. 209A, §§ 1–6 (Michie/Law Co-op 1981); Neb. Rev.Stat. §§ 42–901 to 927 (1943). The statutes vary greatly in their provisions; some are available only if a dissolution proceeding is pending, some make contempt the remedy for violation of an order, others make violation of an order a criminal offense. *See* Center for Women Policy Studies, State Legislation on Domestic Violence 415 (August/September 1980); *See*, e.g., Cal.Penal Code § 273.6 (West Cum.Supp.1981).

4. *See* Comment, Wife Abuse: The Failure of Legal Remedies, 11 J.Mar.Prac. & Proc. 549 (1978). *See generally* articles cited note 3 *supra*. *See also State v. Errington*, 310 N.W.2d 681, 682 (Minn.1981); *Lucke v. Lucke*, 300 N.W.2d 231, 233 (N.D.1981); *Boyle v. Boyle*, No. M 475, slip op. at 4 (Ct.C.P.Allegheny

An adult who is abused by a present or former adult household member, may petition the circuit court for relief under the Act. Two types of relief are available: *ex parte* orders issued without notice to the respondent or a hearing, and orders issued after notice and an on record hearing. Violation of an *ex parte* order of protection of which the respondent has notice or of a full order of protection is declared to be a class C misdemeanor for which the respondent may be arrested without a warrant.

### A.

Jurisdiction of the mandamus action is in this Court because the validity of a Missouri statute is involved, and this is an original proceeding. Mo.Const. art. V, §§ 3, 4. Respondent husband has not filed a brief in the appeal [5] and has not participated in the mandamus action at any stage. This situation presents whether the parties are seeking an advisory opinion and, in particular, whether said parties have standing.[6] Constitutional questions normally are decided only when necessary to the disposition of the case presented. *State ex rel. Board of Mediation v. Pigg*, 362 Mo. 798, 244 S.W.2d 75 (banc 1951).

Standing is related to the doctrine which prohibits advisory opinions because the latter requires the court to dispose of only those issues which affect the rights of the parties present. If a party's interests are unaffected by resolution of an issue he has no standing to raise it. *Id.* 244 S.W.2d at 79. Thus an opinion resolving an issue which the adversaries have no standing to raise is necessarily advisory.

The trial court held that plaintiff had "an unqualified right to the ... relief available under the Act." This ruling confers upon the plaintiff standing to argue in support of the Act because from it she derives an actual and justiciable interest

susceptible of protection. *In Interest of D.M.H.*, 516 S.W.2d 785, 787 (Mo.App.1974). *See In re Estate of Van Cleave*, 574 S.W.2d 375 (Mo. banc 1978).

The question remains whether the trial court during an *ex parte* hearing may appropriately rule the Act unconstitutional *sua sponte.* Circuit Courts have the authority to declare an Act of the Legislature unconstitutional so long as the question has not been determined by this Court. *Stemme v. Siedhoff*, 427 S.W.2d 461 (Mo. 1968). In addition, this determination may be made *sua sponte.* Judges in this state are duty bound by oath to uphold the United States and Missouri Constitutions. In *Ex parte Smith*, 135 Mo. 223, 36 S.W. 628 (1896), this Court stated:

> [I]f it be true, as must be true, that an unconstitutional law *is no law*, then its constitutionality is open to attack at any stage of the proceedings and even after conviction and judgment, and this upon the ground that *no crime* is shown, and therefore the trial court had no jurisdiction because its criminal jurisdiction extends only to such matters as the *law* declares to be *criminal*; and if there is no law making such declaration, or, what is tantamount thereto, if that law is unconstitutional, then the court which tries a party for such an *assumed* offense, transcends its jurisdiction . . . .

*Id.* 36 S.W. at 630; *see, Kansas City v. Hammer*, 347 S.W.2d 865 (Mo.1961) and cases cited. To the extent that the trial court acting on its own held facially unconstitutional those sections entitling plaintiff to the relief sought, it was making a subject matter jurisdiction determination which the court may make *sua sponte* at any time. Rule 55.27(g)(3).

The Court's rulings concerning § 455.085 RSMo Supp.1980, were not directly in issue and went beyond the relief which

---

County, Pa.), *reprinted in* 5 Fam.L.Rep. 2916, 2916–17 (1979).

5. Had the actions not been consolidated, the appeal would have been dismissed. Rule 84.08.

6. Though neither party raises the issue of standing, it is within the notice of this Court because it is a jurisdictional matter antecedent to the right of relief. *See State ex rel. Schneider v. Stewart*, 575 S.W.2d 904, 909 (Mo.App. 1978).

plaintiff requested. These holdings, however, are also jurisdictional in so far as they are related to the facial unconstitutionality of the sections involved, because the entire chapter was held inseverable. Thus, if the sections specifically involved were constitutional, the facial unconstitutionality of § 455.085 RSMo Supp.1980 would void the entire Act. *See State ex rel. Board of Mediation v. Pigg*, 244 S.W.2d at 79.

■ The absence of respondent husband in this case has not infringed upon the policies underlying the standing requirement. The briefs of plaintiff, defendant judge, and many *amicus curiae*[7] have adequately presented the controversy to the Court; and the case has not been created by parties not directly affected. *See Ryder v. County of St. Charles*, 552 S.W.2d 705, 707 (Mo. banc 1977). The Act is new and the state judiciary needs guidance because "[w]hether they do or do not enforce the statute they may be subject to a multiplicity of suits", and where public concern and interest in judicial economy are involved, this Court "may decide constitutional questions even *ex mero motu*." *State ex rel. McMonigle v. Spears*, 358 Mo. 23, 26–27, 213 S.W.2d 210, 212 (banc 1948).

### B.

This Act is presumptively constitutional:

It is a cardinal rule of statutory construction that where a statute is fairly susceptible of a construction in harmony with the Constitution, it must be given that construction by the courts and, unless that statute is clearly repugnant to the organic law, its constitutionality must be upheld.

*Chamberlin v. Missouri Elections Commission*, 540 S.W.2d 876, 879 (Mo. banc 1976). The United States Supreme Court in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), responding to a constitutional challenge to the Georgia death penalty statutes, stated that:

this language need not be construed in this way [in an unconstitutionally broad manner], and there is no reason to assume that the Supreme Court of Georgia will adopt such an open-ended construction.

*Id.* at 201, 96 S.Ct. at 2938.

The legislature is deemed to be aware of the inhibitions imposed by the constitution and therefore if statutory language is susceptible to two constructions, one constitutional and the other unconstitutional, it should be construed in a manner consistent with the provisions of the constitution.

*Americans United v. Rogers*, 538 S.W.2d 711, 723 (Mo. banc 1976) (Bardgett, J., concurring) *cert. denied*, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976). Indeed, this Court's construction of the Act becomes part of the statutory scheme as if it had been so amended by the Legislature. *See State v. Crawford*, 478 S.W.2d 314 (Mo. 1972); *cf. City of St. Joseph v. Hankinson*, 312 S.W.2d 4 (Mo.1958).

### I.

■ The trial court ruled that the Act violates Mo.Const. art. III, § 23, which provides that "[n]o bill shall contain more than one subject which shall be clearly expressed in its title . . ." because it contains provisions relating to children, *i.e.*, custody and support, rather than relating exclusively to adults, and thus contains more than one subject. The title of Senate Bill 524 is "an Act relating to the abuse of adults by an adult household member, with penalty provisions." 1980 Mo. Laws 441. The test to determine if a title violates § 23 is whether "all of the provisions of the statute fairly relate to the same subject, have a natural connection therewith or are the incidents or the means to accomplish its purpose." *State ex rel. Jardon v. Industrial Development Authority*, 570 S.W.2d 666, 677 (Mo. banc 1978). The subject of the Act is adult

7. *Amicus curiae* include: The State Trial Judges Section of the Judicial Conference of Missouri; The Missouri Attorney General; Legal Services of Eastern Missouri, Inc.; The Mis-souri Peace Officers Association; Missouri Council of Churches; The Missouri Association for Social Welfare, et al.

abuse; the purpose of the Act is to protect household members by preventing further violence. The question is whether the child custody provisions fairly relate to the subject of adult abuse and promote the purpose of the Act.

 Studies have shown that the victim of adult abuse is usually a woman. *See* articles cited note 2, *supra.* In a large percentage of families, children have been present when the abuse occurred. In one study, fifty-four percent of the battered women interviewed reported that their husbands had committed acts of violence against their children as well as against them. Gayford, *supra,* note 2 at 196. Even if the child is not physically injured, he likely will suffer emotional trauma from witnessing violence between his parents. Abuse appears to be perpetuated through the generations; an individual who grows up in a home where violence occurs is more likely either to abuse others as an adult or to be a victim of abuse. *See* authorities cited note 2, *supra.* Adult abuse, therefore, is a problem affecting not only the adult members of a household but also the children. The most compelling reason for an abused woman to remain in the home subject to more abuse is her financial dependency; this is particularly true for the women with children. Gelles, *supra* note 2, at 660. The orders pertaining to child custody, support, and maintenance are all fairly related to and serve the purpose of aiding victims of domestic violence and preventing future incidents of adult abuse.

## II.

The court held that §§ 455.035–.045 of the Act facially violate the due process guarantees of U.S.Const., amend. XIV and Mo.Const. art. I, § 10 by permitting a respondent to be deprived of constitutionally protected interests prior to notice or an adversary hearing. The trial court found the *ex parte* orders of protection constitutionally infirm because the Act, on its face, may be applied to exclude a respondent from his home or from contact with his children for a fifteen day period prior to notice or hearing. The trial judge concedes that the goal of the statute is legitimate and important, but nevertheless ruled it unconstitutional because of its impact on important personal rights. He reached this conclusion by finding: that the facts upon which an *ex parte* order may be issued are not easily verifiable and thus not appropriate for presentation by affidavit to the court, as required by *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 617–18, 94 S.Ct. 1895, 1905, 40 L.Ed.2d 406 (1974); and that there is no procedure by which the respondent can dissolve the *ex parte* orders. *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972).

Sections 455.020–.035, RSMo Supp.1980 set out the procedure for obtaining an *ex parte* order of protection. The person seeking an order of protection files a verified petition with the clerk of the circuit court or, if the court is unavailable, with "any available circuit or associate circuit judge in the city or county having jurisdiction . . . ." The judge may grant the *ex parte* orders only "for good cause shown" which is defined as "[a]n immediate and present danger of abuse to the petitioner." "Abuse" is defined as "inflicting, other than by accidental means, or attempting to inflict physical injury, on an adult or purposely placing another adult in apprehension of immediate physical injury." Section 455.-010(1), RSMo Supp.1980. Three orders may be issued *ex parte* : restraining the respondent from further acts of abuse; restraining the respondent from entering the family dwelling unit; and granting temporary custody of any minor children. The statute permits an order restraining the respondent from entering the family dwelling unit to issue in favor of a spouse who otherwise has no property interest in the home. An *ex parte* order of protection remains in effect until the hearing, which is to be held "[n]ot later than fifteen days after the filing of a petition . . . ." Sections 455.035–.045, RSMo Supp.1980.

 The due process guarantee is intended to protect an individual against arbitrary acts of the government. *Wolff v.*

*McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (citing *Dent v. West Virginia*, 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889)). Furthermore, it protects the right to use and enjoy one's property without governmental interference. *Fuentes v. Shevin*, 407 U.S. at 81, 92 S.Ct. at 1994. Before the guarantee of due process comes into play, however, there must be a deprivation by the government of a constitutionally protected interest. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The interests which are subject to temporary deprivation through the issuance of an *ex parte* order constitute significant liberty and property interests falling "within the purview of the Due Process Clause."[8] *See Fuentes v. Shevin*, 407 U.S. at 90, 92 S.Ct. at 1999; *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640 (1981); *Little v. Streater* 452 U.S. 1, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627 (1981); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). Thus the procedures available under the Act must meet the constitutional standard.

■ Notice and an opportunity to be heard must be provided by the state in a meaningful manner prior to deprivation of a protected interest. *Fuentes v. Shevin*, 407 U.S. at 80, 92 S.Ct. at 1994; *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971). This rule is not necessarily applied when there is only a temporary taking, as is the case here. Due process is a flexible concept, *Goss v. Lopez*, 419 U.S. 565, 578, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975); the same procedures need not be applied in all instances. The extent and nature of procedures depends upon weighing of the private interests affected and the governmental functions involved. *Arnett v. Kennedy*, 416 U.S. 134,

167–68, 94 S.Ct. 1633, 1650–1651, 40 L.Ed.2d 15 (1974). The United States Supreme Court in *Mathews v. Eldridge, supra,* identified a third factor to be considered in the balancing formula; the risk of erroneous deprivation using the existing procedures. *See Lassiter v. Department of Social Services*, 101 S.Ct. at 2159 (Stewart, J.), 2165 (Blackmun, J., dissenting) (*Mathews v. Eldridge, supra,* balancing test used in analysis of North Carolina's termination of parental rights statute).

The first factor is the private interest affected. The respondent has two private interests at stake; a property interest in one's home and a liberty interest in custody of one's children. These interests are significant, the importance of which has been emphasized by the United States Supreme Court. *See* cases, *supra.*

The second factor in the balancing formula is the governmental interest. *Mathews v. Eldridge*, 424 U.S. at 347, 96 S.Ct. at 908, The Adult Abuse Act is an exercise of the state's police power. Through the procedures established to aid victims of domestic violence, the legislature promotes the general health, welfare, and safety of its citizens. The magnitude of the problem of domestic violence is evidenced by statistics compiled by the FBI in 1973 which indicate that one-fourth of all homicides in the United States occur within the family.[9] The petitioner's interests which are protected by the state in furthering its interests are the same as those of the respondent. The parties, irrespective of marital status, may own or rent the dwelling jointly, although under the Act this is not required. If it becomes unsafe for both parties to remain in the home, one may need to be excluded. The choice is reduced to the victim of the abuse leaving or the court ordering the abuser to leave. Parents may have an equal interest

---

**8.** Defendant contends that two interests are involved; in his home and in custody of the children. In some cases there may be a third protected interest—the liberty interest of a respondent in his reputation. *See* Taub, *supra* note 2, at 104–06. Any one of these interests

may be sufficient to warrant procedural safeguards required by the Due Process Clause.

**9.** Domestic Violence Hearings, *supra* note 2, at 2 (statement of Steve Y'Barra). *See generally* authorities cited in note 2, *supra.*

in maintaining custody of their children.[10] Both interests are important and have been accorded deference by the courts.

The Missouri Legislature has established a mechanism whereby the state can intervene when abuse of one adult by another household member occurs or is threatened and thus prevent further violence. State legislatures have broad power to enact laws to protect the general health, welfare, and safety. *Day-Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 423–24, 72 S.Ct. 405, 407–408, 96 L.Ed. 469 (1952). States also have been given deference in adopting reasonable summary procedures when acting under their police power. *Mackey v. Montrym,* 443 U.S. 1, 17, 99 S.Ct. 2612, 2620, 61 L.Ed.2d 321 (1979).

The third factor in the test in *Mathews v. Eldridge, supra* is "the fairness and reliability of the existing pretermination procedures, and the probable value, if any, of additional procedural safeguards." *Id.* 424 U.S. at 343, 96 S.Ct. at 907. "The risk of wrongful use of the procedure must also be judged in the context of the issues which are to be determined at that proceeding." *Mitchell v. W. T. Grant Co.,* 416 U.S. at 617, 94 S.Ct. at 1905.

An *ex parte* order of protection is analogous to a temporary restraining order because both are injunctions issued prior to notice or hearing. *See* § 455.045.1, 2, RSMo Supp.1980; *Perseverance Common School District No. 90 v. Honey,* 367 S.W.2d 243, 247 (Mo.App.1963). *Ex parte* orders restraining acts of abuse or entrance into the dwelling are issued upon a showing of "an immediate and present danger of abuse to the petitioner." Section 455.035, RSMo Supp.1980. As in a proceeding to obtain any other restraining order, the petitioner

must satisfy the court that grounds exist to justify granting this order.[11] This will, in most instances, require the petitioner to appear personally before the court at which time the credibility of the petitioner can be tested.[12] In addition, the judge may be able to see first hand "the evidence of violence manifested in burns, cuts, bruises, and fractures." *Boyle v. Boyle, supra* note 4, slip op. at 7. *See United States v. Freeman,* 160 F.Supp. 532, 534 (D.D.C.1957), *aff'd,* 254 F.2d 352 (D.C.Cir.1958); *Ockel v. Riley,* 541 S.W.2d 535, 540 (Mo. banc 1976). If the petitioner is unable to appear because of injuries, this may be alleged and proof thereof will allow the court to determine that there is "[a]n immediate and present danger of abuse."

A protection order, if granted, remains in effect until the hearing which is to be held "[n]ot later than fifteen days after the filing of a petition." Section 455.040.1, RSMo Supp. 1980. This sets a maximum period that the order could be effective without some hearing. Nothing in the statute suggests that the respondent could not obtain an earlier hearing. Concerning other restraining orders, Rule 92.02(b) provides that a party against whom a temporary restraining order has been issued may, upon two days' (or shorter time if the court so prescribes) notice to the opposing party, receive a hearing on the order. This rule is equally applicable to orders issued under the Act. The statute requires that the petition, notice of the hearing date, and any *ex parte* order of protection be served upon the respondent. Section 455.040.2, RSMo Supp. 1980. The court at the same time may include in the notice information regarding the respondent's right to request an earlier hearing and the procedure to be followed.

---

**10.** This differs from those cases where the state is attempting to remove children from the custody of the natural parent, *see, e.g., Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), and vest custody in the court. Here, one parent retains custody.

**11.** The determination made by the court in adult abuse cases is also analogous to a probable cause determination for issuance of a warrant "on oath or affirmation of the complain-

ant." Rule 21.04. *See* Rule 21.05. The forms issued by this Court for seeking relief under the Act similarly require verification and as such are affidavits of facts upon which the Court may act. Sections 455.020, 455.025, RSMo. *See also* Order, Supreme Court of Missouri, en banc, August 8, 1980.

**12.** Judge Marsh, in this case, conducted an *ex parte* hearing on Mrs. William's petition.

The Supreme Court in *Fuentes v. Shevin,* *supra,* outlined categories of cases where outright seizures have been allowed. 407 U.S. at 91, 92 S.Ct. at 2000. The first is where seizure has been directly necessary to secure an important governmental or general public interest; the second is where there has been a special need for prompt action; the third is where the state has kept strict control over its monopoly of legitimate force: there is a government official responsible for determining that seizure was necessary under standards set out in "narrowly drawn statutes." *Id.* at 91, 92 S.Ct. at 2000.

■ The Act meets the foregoing standards. The Act is directly necessary to secure important governmental interests, *i.e.,* protection of victims of abuse and prevention of further abuse. The situation where the challenged Act is to be applied are those where prompt action is necessary, *i.e.,* when there is "[a]n immediate and present danger of abuse"—the only time the *ex parte* order may be issued. The government has kept strict control over its powers. Only a judge in his discretion, may issue the *ex parte* orders. This differs from the procedure where "[p]rivate parties, serving their own private advantage, may unilaterally invoke state power to replevy goods from another" disapproved in *Fuentes v. Shevin, supra* at 93, 92 S.Ct. at 2001. Under the Adult Abuse Act, the petitioner requests the court to act on his or her behalf. The court, not the clerk, must issue the order and the orders are not to be issued routinely but only after the petitioner has filed a verified petition showing good cause.

The burden is on the challenger to show that this exercise of the state's police power is unreasonable, *Caesar's Health Club v. St. Louis County,* 565 S.W.2d 783, 786 (Mo.App. 1978), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978), a burden not here carried. The interests and procedures considered, these *ex parte* order provisions comply with due process requirements because they are a reasonable means to achieve the state's legitimate goal of pre-venting domestic violence, and afford adequate procedural safeguards, prior to and after any deprivation occurs.

## III.

■ The court found that the Act is unconstitutional because it authorizes imprisonment for debt in violation of Mo. Const. art. I, § 11 by making criminal failure to pay support orders. The statute makes criminal violation of the *ex parte* order of protection, § 455.045, RSMo 1980 Supp., of which the respondent has notice, and violation of a full order of protection. Sections 455.050.1, 455.085, RSMo 1980 Supp. The statute sets forth no punishment for violation of ancillary orders dealing with child support, maintenance, or attorney's fees. Sections 455.050.2–7, 455.075, RSMo Supp.1980. Therefore, there can be no imprisonment for debt and the Act does not violate Mo.Const. art. I, § 11.

## IV.

The trial court held the Act void for vagueness because it fails to give adequate warning as to what conduct is proscribed and thus violates U.S.Const. amend. XIV and Mo.Const., art. I, § 10. Defendant argues that § 455.085, RSMo Supp.1980 is impermissibly vague because "one cannot know what conduct is prohibited by reading §§ 455.045 and 455.050, RSMo Supp.1980, for they provide for the delineation of the prohibited conduct by the Judge." The trial court cites *United States v. National Dairy Product Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963), where the Supreme Court held that a criminal statute "must be sufficiently focused to warn of both its reach and coverage." *Id.* at 33, 83 S.Ct. at 598. The trial court also cites *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1971), to assert that the Act is vague because it "impermissibly delegates basic policy matters to . . . judges" *Id.* at 108, 92 S.Ct. at 2299. Defendant has improperly mixed the vagueness prohibition with his attack on the Act as an impermissible delegation of legislative power in violation of Mo.Const.

art. II, § 1 and art. III, § 1 (addressed separately below). One vice of vagueness, as a complete lack of clarity in statutory language, is that the authority charged with its enforcement may "read into" the law whatever suits its purpose resulting in arbitrary application. The converse is not true; statutory language is not vague simply because it permits an authority to make a decision.

■■■ Vagueness, as a due process violation, takes two forms. One is the lack of notice given a potential offender because the statute is so unclear that "men of common intelligence must necessarily guess at its meaning." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed.322 (1926); *see Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The other is that the statute fails to set out "explicit standards" for those who must apply it, resulting in arbitrary and discriminatory application. *Grayned v. City of Rockford*, 408 U.S. at 108, 92 S.Ct. at 2299.

As to the former, "[i]f terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirements as to definiteness and certainty." *Prokopf v. Whaley*, 592 S.W.2d 819, 824 (Mo. banc 1980); *State v. Williams*, 473 S.W.2d 382 (Mo.1971).

Section 455.085.3, RSMo Supp.1980 states:

Violation of the terms and conditions of an *ex parte* order of protection, of which the respondent has notice, shall be a class C misdemeanor. Violation of the terms and conditions of a full order of protection shall be a class C misdemeanor.

Under this section violation of an *ex parte* order is a misdemeanor only if "respondent has notice." This section provides the individual subject to an *ex parte* order an absolute right to be personally served with notice expressly stating what conduct on his or her part is criminal. *See also* § 455.-040.2, RSMo Supp.1980. A full protection order may be issued only after a hearing on record, and notice and an opportunity to be heard is given to the respondent. Sections 455.010(5) and 455.040, subd. 2, RSMo Supp. 1980 require personal service of the full order of protection. There are only two (full protection) or three (*ex parte*) limited orders which may be issued against respondent. For example, an *ex parte* order may state that respondent (named) shall not abuse, threaten to abuse, molest, disturb the peace of the petitioner (named), enter the dwelling unit (house, apartment) of the petitioner, or interfere with petitioners custody of children (named). From the face of these sections it is clear that contravention of the specific orders which are limited in number and of which the respondent is personally informed is a violation of § 455.-085.3, RSMo Supp.1980.

It is further determined that to insure that the respondent has knowledge, the notice served upon him should expressly include a statement informing him that a violation of the order is a class C misdemeanor and stating the maximum penalty associated therewith. This is required by the clear intent expressed by the legislature in §§ 455.010(4), (5), 455.040.1, 2 and 455.085, RSMo Supp.1980, that respondent be informed by complete notification. *See again* Order, Supreme Court, August 8, 1980.

■■■ The Act provides sufficient direction and guidance for the judges who must apply it. The protection orders are to issue only when an "immediate and present danger of abuse to the petitioner" is found. Section 455.035, RSMo Supp.1980. Abuse is further defined as "inflicting, other than by accidental means, or attempting to inflict physical injury, on an adult or purposely placing another adult in apprehension of immediate physical injury." Section 455.-010(1), RSMo Supp.1980. "On a challenge to a statute or ordinance as being unconstitutionally vague . . . the language is to be treated by applying it to the facts at hand." *Prokopf v. Whaley*, 592 S.W.2d at 824. The trial court expressly found that the evidence was "overwhelming and abundantly clear that petitioner has shown all of the elements required by Chapter 455 that

would otherwise (if not for the constitutional issues) entitle her to the relief she seeks" and that petitioner had shown "an unqualified right to the temporary relief." This demonstrates that no arbitrary or discriminatory application is presently or potentially in issue. The trial court was fully aware of the standards for granting relief and how to apply the Act.

## V.

The trial court also found the Act violates the requirements of separation and non-delegation of power under art. II, § 1 and art. III, § 1, Mo.Const. because it vests the judiciary with the legislative power to declare what conduct constitutes a crime.

Article II, § 1, Mo.Const. provides:

The powers of government shall be divided into three distinct departments—the legislative, executive, and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

Article III, § 1, Mo.Const. provides:

The legislative power shall be vested in a senate and house of representatives to be styled "The General Assembly of the State of Missouri."

It is argued that although § 455.045 and § 455.050, RSMo Supp. 1980 specify certain acts which may be prohibited, the use of "may include"[13] makes the sections open-ended, thus permitting the court to include any other terms or conditions it wishes, the violation of which is criminal. This, it is asserted, permits the court to perform the legislative functions of defining what conduct constitutes a crime. If the judiciary were given the general power to randomly select and define action(s) as criminal, guided only by the "shall be to protect the petitioner" language, it would violate the

Missouri constitution. *See State v. Raccagno*, 530 S.W.2d 699, 703 (Mo.1975). For this, reason, defendant's interpretation of "may" must be avoided if a constitutional interpretation is available. *Chamberlin v. Missouri Elections Commission*, 540 S.W.2d 876 (Mo. banc 1976).

In *Rhodes v. Bell*, 230 Mo. 138, 130 S.W. 465 (Mo.1910), this Court recognized that "the Legislature has confided to other branches the performance of duties which in a particular sense might be denominated legislative, which no one has ever thought or contended violated the great principle of independence between the separate departments of government." *Id.* 130 S.W. at 468. The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of law as the complexity of government and economic conditions increases. *Milgram Food Stores, Inc. v. Ketchum*, 384 S.W.2d 510 (Mo.1964). The statutory vesting of some regulatory discretion has been permitted where it "relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare; or where personal fitness is a factor . . . ." *Id.* at 514, quoting *Ex parte Williams*, 345 Mo. 1121, 139 S.W.2d 485, 490 (1940). These principles are equally true with respect to legislative grants of authority to the judiciary, to the extent necessary for the implementation of legitimate legislative goals. This trend is not to be interpreted as exemplifying judicial indifference to these constitutional prohibitions; rather it is the recognition that the boundaries which separate the powers and functions of the governmental branches are difficult to point out and that in some areas they may overlap. *Rhodes v. Bell, supra*. This Court has found unconstitutional delegations of power: *See, e.g., State v. Raccagno, supra; Automobile Club of Missouri v. City of St. Louis*, 334 S.W.2d 355 (Mo.1960). It has also ruled constitutional legislation which

---

**13.** Section 455.045 and 455.050, RSMo Supp. 1980, state that the protective order "shall be to protect the petitioner from abuse and may include:" (the section continues with a list of specific orders).

empowers courts, officials, commissions or boards to make determination or promulgate rules pursuant to general statutory directives. *See, e.g., State ex rel. Fire Dist. of Lemay v. Smith*, 353 Mo. 807, 184 S.W.2d 593 (banc 1945); *State v. Dixon*, 335 Mo. 478, 73 S.W.2d 385 (banc 1934); *Ketring v. Sturges*, 372 S.W.2d 104 (Mo.1963); *City of St. Joseph v. Hankinson*, 312 S.W.2d 4 (Mo. 1958); *State ex inf. Wallach v. Loesch*, 350 Mo. 989, 169 S.W.2d 675 (1943). *Rhodes v. Bell, supra.*

■ The duty and power to define crimes and ordain punishment is exclusively vested in the Legislature. *State v. Raccagno*, 530 S.W.2d at 703. In *State v. Raccagno, supra*, a statute delegated to the Director of Revenue the power "to promulgate reasonable and necessary regulations and make the *violation* of a *regulation* the criminal offense." *Id.* at 702. The statute was held unconstitutional because it "delegated the power to the director of revenue to say whether or not the failure to pay the tax authorized ... would be criminally punishable." *Id.* Unlike the present case, the nonlegislative authority was there empowered to decide "whether or not a violation of any specific provision of the law would constitute a criminal offense ...." *Id.* at 703.

■ Although under the Adult Abuse Act no misdemeanor can occur until a protection order is issued, this is not analogous to defining a crime. Under § 455.085, RSMo Supp. 1980, violation of the terms of either an *ex parte* or full order of protection is a misdemeanor. In § 455.045, RSMo Supp. 1980 three specific orders are delineated and in § 455.050, RSMo Supp.1980 there are two. In these sections the words "may include" indicate that the judge has the limited discretion to include all or less than all of the two or three restraining orders expressly available. Contrary to defendant's contention the discretion applies to the number and not the terms of an order(s). Section 455.035, RSMo Supp.1980 specifically governs when these orders may issue. Under these sections, the court makes the limited determination whether a situation warrants issuance of any or all of the orders which the legislature previously defined as criminal.

If the legislature prescribes conditions necessary for an annexation, it may delegate to the courts the power to determine whether those conditions exist and such is a proper judicial function. *City of St. Joseph v. Hankinson*, 312 S.W.2d at 8. If drug regulation statutes specifically limit the Division of Health authority to identifying and listing of drugs, which fall within a statutory definition, the possession of which is criminal, no unconstitutional delegation occurs. *State v. Bridges*, 398 S.W.2d 1 (Mo. banc 1966). The present case is analogous. Under this Act the court is only authorized to determine whether a legislatively defined right to relief exists. The power exercised by the judiciary under the Act is judicial in nature. The power to issue a restraining order is solely judicial. *Cf.* Rule 92. The determination of whether a litigant is entitled to relief under a statute is also a judicial function. The legislative function of designating a crime was performed by the Legislature when Chapter 455 was enacted.

## VI.

The trial court held that § 455.085, RSMo Supp. 1980 authorizes warrantless arrest under conditions which violate the Fourth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and by art. I, § 15 of the Missouri Constitution. It is contended that this section permits an arrest in the arrestee's home without a warrant, consensual entry, or exigent circumstances, and is thus void "on its face", citing *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

In *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the United States Supreme Court refused to engage in "the abstract and unproductive exercise of laying the extraordinarily elastic categories of [a statute permitting "stop and

frisks"] next to the categories of the Fourth Amendment in an effort to determine whether the two are in some sense compatable, [because] [t]he constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case. In this respect it is quite different from the question of the adequacy of the procedural safeguards written into a statute which purports to authorize the issuance of search warrants in certain circumstances. *See Berger v. New York*, 388 U.S. 41 [87 S.Ct. 1873, 18 L.Ed.2d 1040] (1967)." *Id.* at 59, 88 S.Ct. at 1901. The statute in *Sibron v. New York, supra*, is similar to § 445.085, RSMo Supp. 1980 in that both generally authorize activities which may or may not be offensive to the Fourth Amendment. With the purpose of settling questions regarding the facial validity of the Act, this contention is addressed with the admonition that official actions violate the Fourth Amendment and not general authorization statutes such as the one examined in *Sibron v. New York, supra*.

■ Section 455.085.1, RSMo Supp. 1980 authorizes warrantless arrest where probable cause exists to believe that a violation of a protection order has occurred. Generally, warrantless arrests upon probable cause for felonies or misdemeanors may constitutionally be authorized by statute. *United States v. Watson*, 423 U.S. 411, 417, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976), and cases cited therein; *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975); *State v. Vollmar*, 389 S.W.2d 20 (Mo.1965); *State v. Cantrell*, 310 S.W.2d 866 (Mo.1958); § 544.215, RSMo 1978. However, a warrantless arrest in the arrestee's home is impermissible absent consent to enter or exigent circumstances. *Payton v. New York*, 445 U.S. at 590, 100 S.Ct. at 1382. It is the warrantless in-home seizure which defendant argues is impermissibly authorized by § 455.085.1, RSMo Supp. 1980. Section 455.085.2 states:

The same procedures, including those designed to protect constitutional rights, shall be applied to the respondent as those applied to any individual detained in police custody.

Procedurally it is required that when an in-home arrest occurs either a warrant or consent to enter the house be obtained or that exigent circumstances exist. These procedures are "designed to protect constitutional rights" and are to "be applied to the respondent", § 455.085.2, RSMo Supp. 1980.

■ This section does not authorize unconstitutional arrests; and if such an arrest were to occur under the guise of the Act then the respondent would be entitled to the same remedy as "any individual detained in police custody." *Id.*

## C.

The presumptive constitutionality of the Adult Abuse Act is not overcome by any of the attacks presented.

Accordingly, the judgment dismissing the petition in No. 62762 is reversed and the cause is remanded for further proceedings; the preliminary writ of mandamus in No. 62765 is made peremptory.

DONNELLY, C. J., and RENDLEN and MORGAN, JJ., concur.

BARDGETT, J., concurs in part in separate concurring opinion filed.

SEILER, J., concurs in separate concurring opinion of BARDGETT, J.

WELLIVER, J., dissents in separate dissenting opinion filed.

BARDGETT, Judge, concurring in part.

I concur in the result reached and in the principal opinion except for that portion upholding the constitutionality of § 455.085.3 which makes the violation of an order of protection a crime—a class C misdemeanor.

This is not a criminal case and the question whether the misdemeanor conviction of one for violation of a protective order could be constitutionally upheld ought, in my opinion, await that kind of case. My reser-

vations about this matter flow from the fact that the conduct of a spouse does not become a crime unless and until the judge so declares and then only with respect to that one person. This *law* does not prohibit certain conduct as criminal generally but rather leaves it to a judge to decide whether certain conduct, if engaged in in the future, will be criminal only as to a particular person. Certain acts of an abusive type are criminal by general law—assault and battery—and are a crime regardless of who commits them, but that is not the case under § 455.085.3. I have no particular difficulty with contempt proceedings which may involve incarceration for the violation of an injunctive order—an order of protection—but that is not a crime.

The statute does not make the act of entering one's home a crime. The only time that act becomes a criminal act is when, and if, a judge declares it to be criminal by prohibiting it in a protective order with respect to a particular person. Thus, § 455.085.3 delegates to a judge the power to say what conduct constitutes a crime and whether or not certain conduct, if engaged in by a particular person, will be a crime. The drug cases are not analogous. In those cases the *administrative agency* identified the drug which produced the statutorily proscribed effects and the possession of that drug was then prohibited *generally* as to all people. Neither the agency nor a judge decided that possession of the drug by a particular *person* would be a crime, but that possession of the drug by others would not be a crime.

I believe it highly questionable whether a crime can, under our Constitution, be so personalized; nevertheless, the issue of the constitutionality of § 455.085.3 is unnecessary to the adjudication of this case. I therefore reserve judgment on that matter until the case occurs in which that issue is decisive. I concur in all other aspects of the principal opinion.

WELLIVER, Judge, dissenting.

I respectfully dissent. I believe that the circuit judges, who prior to the principal opinion have held the Adult Abuse Act to be unconstitutional, are in a far better position to perceive the invasions of personal rights flowing from the application of this act than we who sit in these halls.

When we permit child custody, support and maintenance provisions, usually found in Chapter 452, to be hidden behind the newly created term which we now denominate as "Adult Abuse", when we permit the orders contemplated by the act to be entered without notice or hearing, and, when we permit circuit judges to define the elements of crime on a case by case basis without notice or hearing, then we by judicial interpretation have rendered a nullity: (1) the long established rule of statutory construction that penal statutes must be strictly construed against the state, (2) the constituional prohibition, Mo.Const. art. III, § 23, that "[n]o bill shall contain more than one subject which shall be clearly expressed in its title . . .," and (3) due process of law, U.S.Const.Amend. XIV, Mo.Const. art. I, § 10.

The Adult Abuse Act exhibits the fullest potential for creating nine new evils for every evil it would seek by its terms to correct.