**FRIENDS OF The SAN LUIS, INC., Appellant,**

**v.**

**ARCHDIOCESE OF ST. LOUIS, et al., Respondents.**

**No. ED 93582.**

Missouri Court of Appeals, Eastern District, Division Three.

June 8, 2010.

Jonathan P. Beck, Ian C. Simmons, St. Louis, MO, for appellant.

Edward M. Goldenhersh, Bernard C. Huger, David P. Niemeier, for respondents.

LAWRENCE E. MOONEY, Judge.

### Introduction

In this action to save the San Luis Apartment Building from demolition, The Friends of the San Luis, Inc.[1] appeals the circuit court's judgment dismissing its petition for lack of standing. However, because the building was demolished shortly after the circuit court's judgment, we find that the case is moot. We also conclude that the case does not fall within any exception to the mootness doctrine. Therefore, we dismiss the appeal and remand the cause to the circuit court with instructions to vacate its judgment and dismiss the Friends' petition.

1. We shall hereafter refer to this entity as "the Friends," and use plural constructions for ease of reading.

### *Factual and Procedural Background*

The San Luis Apartment Building was a building located at 4483 Lindell Boulevard in the Central West End Historic District of St. Louis, Missouri. The building was first constructed as the DeVille Motor Hotel in 1962, opening in 1963. Charles R. Colbert, a prominent New Orleans architect of the mid-twentieth century, designed the building as a motel building using the International Style. The building became a Holiday Inn in 1966. The Archdiocese of St. Louis and the San Luis Apartments, Inc.,[2] (collectively, "the Archdiocese") acquired the building in the 1970s. The Archdiocese renamed the building the San Luis and converted it into apartments for senior citizens. The San Luis Apartment Building was part of a campus of buildings on the block owned by the Archdiocese; these buildings include the Cathedral Basilica, the Archdiocesan Headquarters, the Cathedral School, and on the adjacent block to the east, Rosati–Kain High School.

The Central West End Historic District was certified by the National Park Service in 1974 as a district comprised of late 19th and early 20th Century Revival Style historic buildings. Within this district of Revival Style houses and buildings is a small enclave of structures, constructed on and around Lindell Boulevard and Taylor Avenue in the mid–20th Century, which retain aspects of the distinctive International Style influence of the period. The San Luis Apartment Building was one of these buildings. Although situated within a certified historic district, the San Luis was not listed on the National Register of Historic Places as a single site, or as part of a small International Style District, and would not be eligible for consideration as a National Register property until 2012, when it turned fifty years old.

The Archdiocese closed the San Luis Apartments and the residents relocated. At the commencement of the instant proceeding, the building had been completely empty for over one year. Citing deteriorating conditions, costly renovations, and its assessment based on architectural and engineering studies that the building had no viable economic use, the Archdiocese determined to demolish the San Luis Apartment Building and construct a surface parking lot in its place.

Accordingly, the Archdiocese applied for a demolition permit from the City of St. Louis. The Preservation Board of the Cultural Resources Office for the City of St. Louis conducted a preliminary review of the Archdiocese's application at its public meeting on June 22, 2009. The Preservation Board heard a presentation covering the historical background of the building, the architect of the building, and the development of International Style buildings in the City and in the Central West End. The Board also heard the Archdiocese's assessment that the building could not be feasibly rehabilitated. Citizens were allowed to voice their support or opposition to the issuance of the demolition permit. In all, twenty-five people expressed their opinion; four spoke in favor of the demolition; twenty-one spoke in opposition to the demolition. The Preservation Board, by a 3–2 vote, granted preliminary approval to demolish the building. Sixteen days later, on July 8, 2009, the Cultural Resources Office approved the demolition. Twelve days later, on July 20, 2009, the Building Commissioner for the City of St. Louis granted a demolition permit to the San Luis Apartments, Inc., for the demolition of the San Luis Building.

**2.** It appears that the San Luis Apartments, Inc. is the record owner of the property.

A group of citizens opposed to the demolition of the San Luis formed The Friends of the San Luis, Inc., a Missouri non-profit corporation, organized for the express purpose of advocating for the preservation of the San Luis Apartment Building. Although the group was only incorporated on July 17th, 2009, the individuals comprising the organization had advocated on behalf of preserving the San Luis since January of 2008. The Board of Directors for the organization is composed of ten individuals—all of whom spoke in opposition to the demolition of the San Luis at the Preservation Board hearing. Of the ten directors, nine are residents of the City of St. Louis; the other is a resident of St. Louis County. One director lives within the Central West End Historic District. The address for the corporation's registered agent and the group's principal place of business are not within the Central West End Historic District. And the organization does not own property adjacent to the San Luis Apartment Building.

The Friends filed a petition for declaratory judgment and injunctive relief against the Archdiocese on July 17, 2009—after the Cultural Resources Office approved the demolition, but before the Building Commissioner granted the actual demolition permit. The Friends' stated purpose for filing its action was to stop further demolition of the San Luis Apartment Building while the Friends pursued administrative remedies.[3] Specifically, the Friends wanted to maintain the building in its then-current condition while it appealed the action of the Building Commissioner pursuant to the appeal process set forth in St. Louis City Ordinance 64689, an ordinance relating to the identification and preservation of "Cultural Resources,"[4] and which provides for review of actions of the Building Commissioner in certain circumstances.[5] The Friends' argument dis-

3. The Friends note the ordinances of the City of St. Louis have no provision addressing a stay of demolition pending administrative appeal.

4. "Cultural Resources," as that term is defined and used in Ordinance 64689 means:
a site or Improvement that:
a) Has significant character or value as part of the development, heritage or cultural characteristics of the City, state or nation; or
b) Is the site of a significant historic event; or
c) Is the work of a master whose individual work has significantly influenced the development of the City, state or nation; or
d) Contains elements of design, detail, materials or craftsmanship which represent a significant innovation; or
e) Owing to its unique location or singular physical characteristic represents an established and familiar visual feature of a neighborhood, community or the City; or
f) Has yielded, or is likely to yield, according to the best available scholarship, archaeological artifacts important in prehistory or history
g) Is a work of art located in a public space.
The term "Improvement" is further defined, and includes, among other things, any building or structure.

5. City Ordinance 64689 Section Forty–Four, entitled "Appeal on actions or determinations: Demolition, Construction, Alteration—Historic District or Landmark/Landmark Site" provides:
Any person aggrieved by, or any officer, department, board, bureau or commission of the city affected by, the action of the building commissioner with respect to a requested permit based on the Cultural Resources Office's application of the Landmark or Historic District standards to a requested permit or based on the recommendations or determinations by the Preservation Board or Cultural Resources Office pursuant to Sections Thirty–Nine through Forty–Three, may appeal the action of the building commissioner to the Preservation Board for review and hearing. Such appeal shall be known as a preservation ap-

played an awareness that their challenge to the demolition process could be rendered moot by the actual demolition.[6] Indeed, the Friends alleged that the Archdiocese had already begun "soft" demolition of the building,[7] and that unless enjoined by the court, would proceed to complete the demolition.

The Friends' prayer for relief was essentially two-fold. First, the group prayed for a declaration that the issuance of the demolition permit for the San Luis Apartment Building was unlawful under the ordinances of the City of St. Louis. Second, the Friends sought injunctive relief, in the form of a temporary restraining order, preliminary injunction, and permanent injunction, to prevent the Archdiocese from proceeding further with demolition. On July 20, 2009—the same day the Building Commissioner issued the demolition permit—the circuit court denied the Friends' request for a temporary restraining order,

peal and shall be taken within thirty (30) days after the action of the building commissioner by filing a notice of appeal with the Cultural Resources Office specifying the grounds of such appeal.

City Ordinance 64689 Section Forty–Five, entitled "Hearing on filed appeal: Demolition, Construction, Alteration—Historic District or Landmark/Landmark Site" provides:

Within forty five (45) days after the filing of appeal to the Preservation Board, the Preservation Board shall hold a hearing thereon. The Preservation Board shall hear the recommendations and evidence submitted by the Cultural Resources Office and by any officer, department, board, bureau or commission desiring to be heard thereon and shall permit the appellant and other parties to the appeal an opportunity to appear and be heard by the Preservation Board and to submit evidence. The Preservation Board may permit any other interested person an opportunity to appear and be heard by the Preservation Board. The Preservation Board may continue or adjourn the hearing or schedule additional hearings to permit a full hearing of the appeal. The Preservation Board shall cause all proceedings in a preservation appeal to be suitably recorded and preserved.

City Ordinance 64689 Sections Thirty–Nine through Forty–Three, in part, address the requirement of a permit to demolish a building in a Historic District, and the requirement prohibiting the building commissioner from issuing such a permit "unless the Cultural Resources Director shall have determined that the proposed work complies with the applicable Historic District or Landmark or Landmark site standards, or the Preservation Board or Cultural Resources Director has rec-

ommended that the application for permit be approved." Section Forty–One.

6. The Friends alleged that demolition of the San Luis and the issuance of a permit for that demolition were improper and unlawful in a number of respects. For instance, the Friends alleged that the demolition did not comply with the intent of St. Louis City Ordinance 64689; that the proposed demolition did not comply with the plans and standards of the Central West End Historic District, codified by St. Louis City Ordinance 56768; that the Preservation Board considered incorrect and inappropriate standards in granting preliminary approval of the demolition; that the Board did not consider the effect of the demolition on the significant features or characteristics of the Central West End Historic District, which were the basis for designation of the district; and that the Board improperly considered an excessively-high per-square-foot figure for the cost of rehabilitation. The Friends asserted that rehabilitation of the San Luis Building would not exceed its assessed value. The Friends also argued that the building was eligible for listing on the National Register of Historic Places. The group contended that further demolition of the building would undercut these arguments, e.g., demolition would increase the per-squarefoot figure for the cost of rehabilitation, and also would make the building ineligible for placement on the National Register of Historic Places.

7. Thomas Richter, the Archdiocese's Director of Building and Real Estate, explained that "soft" demolition included removing items related to walls, ceilings, and floors, as well as wiring, piping, drywall, and other nonstructural items.

but scheduled a hearing on the Friends' application for preliminary injunction.

The Archdiocese moved to dismiss the Friends' petition for lack of standing. The Archdiocese argued the Friends lacked standing because the group did not have a specific and legally cognizable interest at stake, as the Friends' professed interest to save the San Luis Apartment Building from demolition was not one protected by law or distinct from the interest of the general public.[8]

The Friends countered with several arguments in support of its standing. To begin, the Friends argued that being composed of residents of the City of St. Louis, the group had standing to contest demolition of historic buildings and to enforce the historic-preservation mandates set forth in the city's ordinances by virtue of the Preservation Review Ordinance, City Ordinance 64689. The Friends noted the stated intent and purpose of the Preservation Review Ordinance is to promote the interests of residents by preserving and protecting historic buildings located in the City.[9] The group further noted section Forty–Four of the ordinance states that "*any* person aggrieved" by the granting of a permit to demolish a historic building has the right to appeal an action by the Building Commissioner in granting a demolition permit based on the recommendation of the Preservation Review Board. (Emphasis supplied). Thus, the group contended, because the Preservation Review Ordinance exists to protect the historical and cultural integrity of the City, and because the ordinance sets forth guidelines and restrictions prescribing when and whether the Preservation Review Board and the Building Commissioner may issue demolition permits for historical buildings, it follows that residents of St. Louis must be able to act when the Preservation Board or Building Commissioner ignore the Preservation Review Ordinance and issue a demolition permit for a historic building that the ordinance protects on behalf of the residents. The Friends argued that the Preservation Review Ordinance is unenforceable and without meaning if residents of the City do not have standing to object when the Preservation Board ignores the mandates, guidelines, and restrictions set forth in the ordinance.[10] And similarly, the group

8. The Archdiocese asserted two additional grounds for dismissal. For one, the Archdiocese argued that the Friends' petition should be dismissed because a declaratory judgment could not be used to challenge an administrative decision. For its other ground, the Archdiocese contended the Friends petition should be dismissed for failure to state a claim against the Archdiocese. The Archdiocese argued that the Friends failed to plead any facts demonstrating the Archdiocese's alleged wrongdoing, but instead had directed all allegations of unlawful conduct towards the Preservation Board.

9. City Ordinance 64689 states, in part:
   WHEREAS, preservation of the City's natural, architectural and cultural heritage is beneficial to the City and its residents....BE IT ORDAINED BY THE CITY OF ST. LOUIS AS FOLLOWS:.... SEC-

TION TWO. Purpose. The intent of this ordinance is to promote the prosperity and general welfare of the public, including particularly the educational and cultural welfare, through: The protection, ... perpetuation ... of buildings ... as have or may reasonably be expected to have historical or cultural value and significance to the nation, the state or the City ... The increase of commerce and prosperity by the protection of the value, convenience, and amenity of property and to promote the tourist trade and civic pride and wider public knowledge and appreciation of the heritage and history of St. Louis.

10. In particular, the Friends note the inability to enforce Section Sixty–One of the Preservation Review Ordinance, which states that proposed demolitions of "Sound High Merit Structures *shall not* be approved," and that

contended the administrative-appeal right provided by the Preservation Review Ordinance is illusory and meaningless if a stay of demolition cannot be obtained pending that appeal.

The Friends additionally claimed standing because demolition of the San Luis Apartment Building adversely affected more distinctly and directly the group's interest in the natural, architectural, and cultural heritage of the City of St. Louis than it affected the interest of the general public. And lastly, the Friends drew support for its argument from federal decisions, noting that actions seeking enforcement of the National Historic Building Act, federal courts have recognized that neighborhood residents have a legally-protected interest in maintaining the environmental and historic quality of their neighborhood.[11] The Friends argued that like the residents in these federal cases, and for the reasons articulated by the federal courts, the St. Louis residents should have standing to enforce the historic-preservation mandates set forth in the Preservation Review Ordinance.

■ The circuit court dismissed the Friends' case, with prejudice, for lack of standing.[12] In its sharply-worded judgment issued on July 27, 2009, the circuit court concluded that the Friends lacked standing because the group had not shown any pecuniary or personal interest, other than its generalized interest in preservation of historic structures in the City of St. Louis, that was directly in issue or jeopardy and that could be the subject of some consequential relief. The court found there was nothing in Ordinance 64689 that conferred standing on anyone who wanted to contest a demolition permit. Rather, the court noted, the ordinance employs the classic administrative-law phrase "person aggrieved" in describing those who may seek review of a demolition permit before the Preservation Board. Thus, the court noted, the ordinance recognizes that only a person "aggrieved"—that is, one who has standing—may prosecute an appeal. The court further concluded that even if the ordinance purported to confer standing on any citizen, it would not suffice to clothe the court with jurisdiction, as city ordinances cannot add to or subtract from the court's constitutional jurisdiction. The court explained that the Missouri constitution confers upon circuit courts jurisdiction of "cases and matters." This constitutional provision, the court reasoned, does not authorize courts to entertain lawsuits unless the plaintiff has the necessary personal stake in the outcome of the case to create a justiciable controversy, the existence of which is necessary to confer upon the court the authority to proceed. In other words, the court explained, to establish standing a plaintiff must have suffered an "injury in fact," must show a causal connection between the injury and the conduct complained of, and must show that it is likely that the injury may be re-

demolition of Merit or Qualifying Structures "shall not be approved except in unusual circumstances which shall be expressly noted." (Emphases added).

11. The Friends cite to the following federal decisions: *Pye v. United States*, 269 F.3d 459 (4th Cir.2001); *Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168 (3d Cir.2000); and *Tyler v. Cuomo*, 236 F.3d 1124 (9th Cir. 2000).

12. Because the circuit court found that the Friends lacked standing, the court's dismissal of the cause of action properly should have been one without, not with, prejudice. *See Missouri Soybean Ass'n v. Missouri Clean Water Com'n*, 102 S.W.3d 10, 29 (Mo. banc 2003).

dressed.[13] Finding the Friends' standing to contest the demolition "imperceptible," the court concluded it was evident the action must be dismissed.

The Friends appealed, alleging the circuit court erred in dismissing the group's petition for lack of standing. The group filed their notice of appeal on September 4, 2009. The Archdiocese, in the mean time, continued with its demolition of the San Luis Apartment Building. Demolition was completed on September 11, 2009. The Archdiocese provided this Court with pictures of the San Luis site, taken in April of 2010, which show that the building has been completely demolished, and that construction of the parking lot is well-underway.

### Discussion

■ At the outset of any appellate review, we have an obligation to determine whether the case presents a "real, substantial, presently-existing controversy, or is instead moot." *Jackson County Bd. of Election Comm'rs v. City of Lee's Summit,* 277 S.W.3d 740, 743 (Mo.App. W.D.2008)(internal quotation omitted); *City of Manchester v. Ryan,* 180 S.W.3d 19, 21 (Mo.App. E.D.2005). It is well-established that Missouri courts do not determine moot cases or render advisory opinions. *Kinsky v. Steiger,* 109 S.W.3d 194, 195 (Mo.App. E.D.2003); *State ex rel. Missouri Cable Television Ass'n v. Missouri Public Service Comm'n,* 917 S.W.2d 650, 652 (Mo.App. W.D.1996). "Appellate courts do not sit as moot courts determining speculative issues for the benefit of some other case at some other time." *Lee's Summit,* 277 S.W.3d at 744 (internal quotation omitted). "The existence of an actual and vital controversy susceptible of

some relief is essential to appellate jurisdiction." *Ryan,* 180 S.W.3d at 21 (internal quotation omitted). We do not decide questions of law disconnected from the granting of actual relief. *Comm. for Educ. Equality v. State,* 878 S.W.2d 446, 454 (Mo. banc 1994). A case is moot when an event occurs that makes the court's decision unnecessary or makes granting effectual relief by the court impossible. *Kinsky,* 109 S.W.3d at 195. "Even a case vital at inception of the appeal may be mooted by an intervening event which so alters the position of the parties that any judgment rendered merely becomes a hypothetical opinion." *Ryan,* 180 S.W.3d at 21 (internal quotation omitted).

■ This case is moot. The Friends sought to stop demolition of the San Luis Apartment Building. That building has been completely demolished. The Archdiocese is now building a parking lot. Even if we decided the circuit court erroneously determined that the Friends lacked standing, it is impossible for this Court to grant any effectual relief. The building is gone. As the last vestiges of the San Luis disappeared, so too did the Friends' cause of action as well as the ability of this Court to grant relief. This Court cannot reconstruct the building from its rubble. "What's done cannot be undone." *MacBeth,* Act V, scene 1; *Kinsky,* 109 S.W.3d at 196.

■ The Friends concede that this case is moot. Nevertheless, the group requests this Court exercise its discretionary jurisdiction to entertain the appeal and determine the issue of standing. The group ardently believes the circuit court erred in concluding the group lacked standing to bring its cause of action; the

---

**13.** The circuit court cited the test for standing set forth in the United States Supreme Court's decision *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

group ultimately seeks reversal of that ruling.[14] They contend the court's judgment effectively holds that no one has standing, and argue this creates a precedential brick wall for similar historic-preservation suits in the future. The group asserts that St. Louis has many privately-owned buildings subject to the Preservation Review Ordinance, with owners, like the Archdiocese, wishing to raze those buildings. The Friends argue that the next time city residents wish to enforce the Preservation Review Ordinance, they will confront the same problem as the Friends—finding their cause of action dismissed for lack of standing. Moreover, the group contends the issue will consistently evade review. They assert it takes but a short amount of time to irretrievably demolish a historic building, an assertion with which we agree. Therefore, the Friends argue, in future situations such as this, the building will be demolished before the party can even file a notice of appeal, let alone litigate the issue of standing to its conclusion. Thus, the group asks this Court to address the question of standing.

▄▄▄▄▄ "As a general rule, moot cases must be dismissed." *Warlick v. Warlick,* 294 S.W.3d 128, 130 (Mo.App. E.D.2009)(internal quotation omitted). Missouri, however, recognizes two exceptions to this general rule under which this Court may exercise its discretion to hear the appeal and reach the merits of a moot case. *Id.* First, we may consider the appeal if the case becomes moot after it has been argued and submitted. *Id.* Second,

we may consider the appeal if the case presents "an unsettled legal issue of public interest and importance of a recurring nature that will escape review unless the court exercises its discretionary jurisdiction." *State ex rel. Chastain v. City of Kansas City,* 968 S.W.2d 232, 237 (Mo. App. W.D.1998); *In re Dunn,* 181 S.W.3d 601, 604 (Mo.App. E.D.2006)(exercising discretion to review moot case, finding that the "public-interest" exception applied). This "public-interest" exception is construed very narrowly. Ryan, 180 S.W.3d at 22. "[I]f an issue of public importance in a moot case is likely to be present in a future live controversy practically capable of appellate review, then the 'public-interest' exception does not apply." *Id.* (internal quotation omitted).

The present case does not fall within either of these exceptions. First, the case became moot prior to, not after, argument and submission to this Court. And second, we do not believe this is an appropriate case in which to exercise our discretion under the "public-interest" exception. Preservation of historic buildings is a worthy cause, and the issue of standing the Friends seek to raise is of public importance. However, we conclude the case does not fall within the "public-interest" exception.

▄▄▄▄ Standing is an individualized, fact-specific inquiry. We cannot say that the facts present in this case will be repeated in future controversies. *See Dunn,* 181 S.W.3d at 604 (finding case fell within the "public-interest" exception where precise

---

14. The group also advocates for a different analysis of standing when it comes to historic preservation. The Friends argue that the question of standing has its own unique considerations when analyzing a historical-preservation ordinance because the benefits of historic preservation will inherently inure to the benefit of the entire community. Citing to two previous decisions by this Court, *Eyerman*

*v. Mercantile Trust Co., N.A.,* 524 S.W.2d 210 (Mo.App.1975) and *Lafayette Park Baptist Church v. Scott,* 553 S.W.2d 856 (Mo.App. 1977), the Friends advocate relaxing the need for plaintiffs to show how their interest is distinct from the general public, because an interest in historic preservation is common to the entire community.

issue and scenario would recur). Cases in the future will likely involve different circumstances, different residents, and different interests. An individual or group may have standing in one situation, but not another. Even if cases in the future are brought by, and on behalf of, the residents of the City of St. Louis, the cases will involve different circumstances. Any decision we render would truly be hypothetical, with little or no application in future historic-preservation cases.

Furthermore, we perceive no reason why the issue need evade appellate review in a future live controversy. Supreme Court Rule 84.02 gives appellate courts the discretionary power to docket appeals, and courts have employed the power to expedite appellate proceedings when delay would threaten to moot an appeal. *See Chastain*, 968 S.W.2d at 239. Further, the Friends could have sought an original writ of prohibition from this Court. And the Friends could have sought a stay from this Court. Rule 92.04. We note the Friends did not file their appeal until September 4, 2009, some thirty-nine days after the circuit court's judgment and just seven days before demolition of the San Luis was completed. And the Friends did not seek an expedited appeal, a writ, or a stay. The present case could have been prosecuted in such a way to avoid the present mootness problem. We do not believe future cases presenting the same issue will necessarily evade this Court's scrutiny. .

We are left, then, with the appropriate disposition of the circuit court's judgment. The Friends are concerned that the circuit court's judgment, which the Friends believe is grievously in error, will stand as a roadblock to future historic-preservation efforts. Whether the circuit court's judgment is erroneous or not, we agree with the Western District's well-reasoned *Chastain* decision, wherein the Court concluded that the underlying trial-court judgment in a moot case should normally be vacated upon request if the requesting party had no control over the mooting event. *Chastain*, 968 S.W.2d at 240–43. The Archdiocese, at oral argument before this Court, stated it is not opposed to having the circuit court's judgment vacated. We remand the cause to the circuit court with instructions to vacate its judgment and to dismiss the Friends' petition without prejudice due to the mootness of the controversy.

It has been observed that Courts must be responsive to efforts to preserve historic districts and, within the framework of the law, support such efforts. *Lafayette Park Baptist Church v. Scott*, 553 S.W.2d 856, 864 (Mo.App.1977). But the question of a party's standing under the City of St. Louis's historic-preservation ordinances will have to be determined in a future live controversy.

GLENN A. NORTON, P.J., and MARY K. HOFF, J., concur.