

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| L.E.C., | ) | No. ED110515 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court |
| v. | ) | of Jefferson County |
| | ) | |
| K.R.C., | ) | Honorable Joseph A. Rathert |
| | ) | |
| Appellant. | ) | Filed: June 20, 2023 |

## Introduction

Husband K.R.C. appeals the judgment of the circuit court, by which the circuit court entered a full order of protection against Husband under Missouri's Adult Abuse Act. Husband challenges the sufficiency of the evidence to support the order, given the four-plus years that passed between the alleged actions giving rise to Wife L.E.C.'s petition, filed in September of 2017, and the hearing on that petition, held in October of 2021. This Court holds that insufficient evidence existed to support the full order of protection entered against Husband. We therefore reverse the circuit court's judgment and remand the cause to the circuit court with directions to vacate its judgment.[1]

---

[1] We deny Wife's motion to dismiss or, in the alternative, to strike Husband's brief for failure to comply with Rule 84.04(d).

## Factual and Procedural Background

On September 26, 2017, Wife sought an order of protection against Husband for alleged stalking and domestic violence. Wife had filed for dissolution of her marriage to Husband the previous month, after twenty-three years of marriage.

In her petition, Wife alleged Husband had knowingly and intentionally: caused or attempted to cause her physical harm, coerced her, stalked her, harassed her, followed her from place to place, and threatened to do any of the above. She alleged Husband had done so by two specific acts. First, Wife alleged Husband broke into the barn at the marital residence on September 22, 2017, stole items from the barn, and stated everything was his. Second, Wife alleged that Husband tried to break through the office window of the marital home on September 26, 2017, while her son was at home.

Wife further generally alleged that Husband was stalking and following her, and peeking in windows. She alleged that Husband told her in a belligerent manner that he was not giving her a divorce. She claimed Husband was threatening her and stating that he was coming for her, that he would find her, that he would take care of her, and that she would not live through the divorce. Wife alleged she was in fear and scared for her life. Lastly, she asked the court to keep Husband from her and to keep him from peeking in windows until her divorce was final.

The circuit court issued an *ex parte* order of protection, and Husband was served with that order, on the same day Wife filed her petition, September 26, 2017. Missouri's Adult Abuse Act mandates that a hearing shall be held "not later than fifteen days" after the filing of a petition for an order of protection, unless the court deems that a continuance should be granted for good cause shown. Section 455.040. The circuit court here, however, did not hold a hearing on Wife's petition

2

for an order of protection until four years later, when the court heard the matter as part of the dissolution trial in October of 2021.

Upon issuing the *ex parte* order, the circuit court initially continued the hearing for one month, until October 23, 2017, for good cause shown. The circuit court did not specify what constituted that good cause. The parties then consented to another month-long continuance. In March of 2018, after the hearing had been continued twice more without explanation, Wife requested a continuance, and the circuit court continued the matter for another month. In April 2018, the circuit court ordered the cause transferred to a different division of the circuit court that was assigned the parties' dissolution case. From that point on, the hearing on Wife's petition was repeatedly continued for over three years until trial, and was done so without explanation, request, consent, or a statement of good cause shown on the record.

At trial in October of 2021, Wife testified to events that purportedly occurred in 2017. The last complained-of act took place on September 29, 2017. Wife made no allegations and testified to no acts or threats between that date and trial. When asked what led her to request an order of protection, Wife responded: "There were many things. He tried to break in the house when my son was home." She also stated that Husband broke into the barn and took all the items when she was gone for a weekend. Wife believed Husband was harassing her and stalking her, and said that he followed her on more than one occasion, and that he was trying to figure out where she was at certain times. Wife provided no details. Wife further testified that she sought an order of protection because of Husband's verbal communications "through the texts and things he would say to me."[2] She also claimed Husband disconnected the internet cables to her house, and claimed that he placed a camera on his mother's house, pointed toward her house.

---

[2] Those text messages were not introduced or admitted at trial.

Wife also testified that Husband physically abused her "two maybe three times" during the twenty-three-year marriage. She stated: "He has restrained me, he has pushed me, he has shoved me … multiple times." She provided details as to only two incidences, without specific dates. She explained the first time "was more of a restraint and verbal abuse calling me a cunt." The second time Wife claimed Husband pushed her and shoved her into the garage wall. Wife testified that she had no physical injuries and that she had not sought medical care.

Wife affirmed the allegation in her petition that Husband had threatened her. When asked what Husband said as a threat, Wife responded: "[N]ormally what he would say is that he would kill me or take care of me; I won't have to worry about it. You know, I'm going to get what's mine. You'll get what's coming to you and stuff like that." She testified that Husband also stated that "It's all mine in the garage … It's none of yours," that he would never grant her a divorce, that she wouldn't live through the divorce, and that he was coming for her.

Lastly, Wife testified she was afraid of Husband at the time she sought the order of protection in 2017, and that she was "still afraid of him." When asked why she was afraid of Husband, Wife stated: "I think he would hurt me, absolutely without a doubt. His problems would be over. And as long as he does it before we're divorced, he gets whatever I have." When asked if there were any other times, other than the time in September 2017, when Husband made her afraid for her life or afraid of harm from him, Wife testified "the day he left," which was at the end of March 2017. No other instances were cited and no further details were given.

Husband countered, denying he was ever violent with Wife. He testified he never pushed or shoved Wife against the wall, even lightly. He also noted Wife never had bruises. He denied threatening Wife and testified that he never told Wife that she was not going to live through the divorce. He denied cutting the cables to the house, and explained the camera was installed at his

4

mother's house for security, as she lived alone. He stated he did not instruct his mother to focus the camera on Wife's property.

Husband admitted going to the marital home on September 26, 2017. He explained he did so upon the advice of his attorney, who told him he needed to go get his belongings from the house. He explained that when he arrived, he tried the garage door code, but that the code had been changed. He tried both the front and back doors, but found both doors locked. He then started checking windows. He stated that when he reached the office window, blinds began to open, so he left. He had assumed his son was at school. Husband explained that he was going to retrieve many of his personal belongings – clothes, his class ring, and other personal incidentals – and that he never entered the house. Lastly, Husband testified he had not spoken with Wife since the *ex parte* order of protection had been issued.

In addition to the parties' testimony, two police reports were introduced at trial. The first report concerns removal of items from the garage (also referred to as a barn) at the marital residence on September 22, 2017. The report shows that Wife sent a text message to Husband prior to September 22, stating he could retrieve any of his equipment or tools from the detached garage located at the marital residence. Wife was away from home from September 21 through September 22. When she returned home, she noticed several items missing from the garage and called the sheriff's office. The deputy sheriff responding to the call contacted Husband, who stated he had the items in his possession. Husband also advised that he had not broken the locking system on the shed, as Wife claimed. The deputy sheriff did not observe any damage to the locking system on the garage.

The second report concerns the camera at the home of Husband's mother. Wife called the sheriff's department on October 1, 2017, and reported that on September 29, she observed a red

5

light in a garage window of the neighboring residence, which belonged to her mother-in-law. Wife also mentioned the light to her son who, upon investigation, discovered the light to be originating from a camera inside the window, which was pointed in the direction of Wife's residence. The son placed shipping tape on the window, to block the view of the camera.

The circuit court entered judgment and full order of protection against Husband on January 14, 2022. Husband now appeals. Before addressing the substantive merits of Husband's appeal, and his contention that insufficient evidence exists to support the full order of protection, we pause to address two issues: mootness, and the significant delay in holding a hearing on the *ex parte* order of protection.

**Mootness Doctrine**

At the outset of any appellate review, this Court has an obligation to determine whether the case presents a "real, substantial, presently-existing controversy, or is instead moot." *Friends of the San Luis, Inc. v. Archdiocese of St. Louis*, 312 S.W.3d 476, 483 (Mo. App. E.D. 2010)(internal quotation omitted); *State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001)(internal quotation omitted). "The existence of an actual and vital controversy susceptible of some relief is essential to appellate jurisdiction." *Id*. (internal quotation omitted). "Whether a case is moot is a legal question that the appellate court raises *sua sponte* on appeal." *K.L.M. v. B.A.G.*, 532 S.W.3d 706, 709 (Mo. App. E.D. 2017)(internal quotation omitted). It is well-settled that Missouri courts do not determine moot cases. *Friends of the San Luis*, 312 S.W.3d at 483. "A case is moot when an event occurs that makes the court's decision unnecessary or makes granting effectual relief by the court impossible." *Id*.; *Reed*, 41 S.W.3d at 473 (internal quotation omitted). "Even a case vital at inception of the appeal may be mooted by an intervening event which so alters the position of

the parties that any judgment rendered merely becomes a hypothetical opinion." *Id*. (internal quotation omitted).

We find this case is moot. The full order of protection from which Husband appeals expired on January 13, 2023. The judgment clearly states that the judgment and full order of protection "shall be effective until January 13, 2023, unless sooner terminated or extended by the court." No evidence exists in the record before us to indicate that the order of protection was extended. "When a full order of protection has expired, any appeal of that order is moot, because there is no practical effect in vacating an order that has expired." *K.L.M.*, 532 S.W.3d at 709 (internal quotation omitted.) "A decision by this Court regarding an order of protection that has expired is unnecessary and it is impossible for us to grant any relief." *Warlick v. Warlick*, 294 S.W.3d 128, 130 (Mo. App. E.D. 2009). Therefore, this appeal is moot. *See*, *e.g.*, *J.S. v. D.C.*, 368 S.W.3d 289, 292 (Mo. App. E.D. 2012); *T.C.T. v. Shafinia*, 351 S.W.3d 34, 36 (Mo. App. W.D. 2011); *Warlick*, 294 S.W.3d at 130 (and cases cited therein).

"As a general rule, moot cases must be dismissed." *Warlick*, 294 S.W.3d at 130. However, Missouri recognizes two narrow exceptions to this general rule by which the Court may exercise its discretion to hear the appeal and decide a moot question. *Id*. First, this Court may consider the appeal if the case became moot after argument and submission. *Id*. Second, this Court may consider the appeal if the case presents an issue that is of general public interest and importance, that will recur, and that will evade appellate review in future live controversies. *Id*. If an appeal falls within either of these two exceptions to the mootness doctrine, then dismissal of the case due to mootness is discretionary rather than mandatory. *Id*.

7

The second of these exceptions – the public-interest exception – applies to appeals from a full order of protection that has expired.[3] Section 455.007; *K.L.M., 532 S.W.3d at 709*; *C.D.R. v. Wideman*, 520 S.W.3d 839, 842 (Mo. App. W.D. 2017); *Woodard v. Conde*, 648 S.W.3d 760, 761 n.2 (Mo. App. S.D. 2022).[4] Accordingly, we exercise our discretion to evaluate the substantive merit of Husband's appeal, and his contention that insufficient evidence exists to support the full order of protection.

**Delay in Hearing**

Missouri's Adult Abuse Act ("Act") was enacted in response to the increased national awareness of the prevalence of domestic violence and the need to protect the victims of that violence.[5] *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 226/232 (Mo. banc 1982). The legislature intended the Act to provide protection from further acts of abuse. *Id*. at 229; *Capps v. Capps*, 715 S.W.2d 547, 552 (Mo. App. E.D. 1986).

Under the Act, any person who has been subjected to domestic violence by a present or former family or household member, or who has been the victim of stalking or sexual assault, may petition the circuit court for relief under the Act. Section 455.020.1; *Marsh*, 626 S.W.2d at 227. Two variations of relief are afforded: *ex parte* orders issued without notice to the respondent or a hearing, and orders issued after notice and an on-record hearing. *Marsh*, 626 S.W.2d at 227; Section 455.035 (*ex parte*); Section 455.040 (full order).[6] Here, the circuit court issued an *ex parte*

---

[3] The first exception does not apply here because the case became moot prior to argument and submission to this Court.

[4] Section 455.007 provides in full:

> Notwithstanding any other provision of law to the contrary, the public interest exception to the mootness doctrine shall apply to an appeal of a full order of protection which has expired.

[5] Missouri's Adult Abuse Act is codified at Sections 455.010 through 455.095.

[6] Section 455.035.1 provides in part:

> Upon the filing of a verified petition pursuant to sections 455.010 to 455.085 and for good cause shown in the petition, the court may immediately issue an ex parte order of protection. An immediate and present danger of domestic violence to the petitioner or the child on whose behalf the petition is filed shall constitute good cause for purposes of this section.

order of protection on the same day Wife filed her petition. An *ex parte* order of protection, if granted, takes effect when entered and remains in effect until there is valid service of process and a hearing is held on the motion. Section 455.035.1; *Marsh*, 626 S.W.2d at 231.

The Act mandates a hearing shall be held "not later than **fifteen days** after the filing of a petition that meets the requirements of Section 455.020 … unless the court deems, for good cause shown, that a continuance should be granted." (Emphasis added). Section 455.040.1(1); *Marsh*, 626 S.W.2d at 231. Here, over four years elapsed before the circuit court held a hearing on Wife's petition. For the majority of that time, no good cause is shown on the record. Wife petitioned for an order of protection on September 26, 2017. The circuit court issued an *ex parte* order that same day, continued the cause "for good cause shown," and set the matter for a hearing on October 23, 2017. The circuit court did not specify that good cause. The parties then consented to another month-long continuance. In March of 2018, after the hearing had been continued twice more without explanation, Wife requested, and was granted, a continuance for another month. In April 2018, six-to-seven months later, the circuit court ordered the cause transferred to a different division of the circuit court that was assigned the parties' dissolution case. From that point on, the hearing on Wife's petition was repeatedly continued, as a matter of course, without explanation. If the parties requested a continuance, or consented to a continuance, that is not of record. Nor is there any other determination of the cause being continued for good cause shown, except for the first continuance in September of 2017. The parties represented at oral argument before this Court that the hearing just continued along with the dissolution case. The hearing on Wife's petition for an order of protection was finally had in October 2021, as part and parcel of the dissolution trial.

The delay here is quite significant. *See U.S. v. Eight Thousand Eight Hundred and Fifty Dollars*, 461 U.S. 555, 564 (1982)(finding an eighteen-month delay between seizure of currency

9

and the filing of the civil forfeiture action "quite significant"). The parties did not challenge the repeated continuances in the circuit court. Nor did Husband directly raise the continuances and resulting delay as an issue on appeal. Nonetheless, the continuances and resulting delay in holding a hearing on Wife's petition four-plus years' later is concerning. Though under the Act the circuit court may continue the hearing for good cause shown, we are unaware of any statute authorizing an *ex parte* order of protection of indefinite duration or authorizing continuances *ad infinitum*. *See C.D.R. v. Wideman*, 520 S.W.3d 839, 847 (Mo. App. W.D. 2017). We acknowledge the circuit court has discretion to set the hearing beyond the fifteen days after a petition is filed. *Jenkins v. Croft*, 63 S.W.3d 710, 713 (Mo. App. S.D. 2002). However, that discretion is not limitless. The circuit court may be afforded discretion, but the circuit court does not enjoy absolute or arbitrary discretion. *See James v. James*, 853 S.W.2d 425, 430 (quoting *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202 (Mo. banc 1991))(continuances under Rule 65.01). The "exercise of the trial court's discretion should be directed toward the accomplishment of fundamental fairness and the avoidance of unfair disadvantage." *Blake v. Irwin*, 913 S.W.2d 923, 936 (Mo. App. W.D. 1996).

The Act protects victims, but the Act also acknowledges due process rights of the responding parties, here Husband. The Act balances the right of the petitioner to be free from abuse with the right of the responding party to due process, to be heard in a meaningful time and manner, before being deprived of their liberty and property interests. *Grist v. Grist*, 946 S.W.2d 780, 782 (Mo. App. E.D. 1997); *see also E.H. v A.I.*, 621 S.W.3d 684, 687 (Mo. App. E.D. 2021)(noting procedural due process rights apply to a hearing on a full order of protection). "The interests which are subject to temporary deprivation through the issuance of an *ex parte* order constitute significant liberty and property interests falling within the purview of the Due Process Clause." *Marsh*, 626 S.W.2d at 230. These protected interests include the interest of a respondent

in his home, in the custody of children, and the liberty interest of a respondent in his reputation. *Marsh*, 626 S.W.2d at 230 n.8.

Protection of a responding party's rights is reflected in the language of the statute itself. Section 455.040.1(1) provides that a hearing is to be held "**not later than fifteen days** after the filing of a petition…." (Emphasis added). That the legislature specified a fifteen-day time period is meaningful and instructive. It evidences an intent on the part of the legislature that the court needs to proceed in these matters in an <u>expeditious</u> manner.

The central meaning of procedural due process is clear: "parties whose rights are to be affected are entitled to be heard." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). "It is equally fundamental that the right to be heard must be granted at a *meaningful time* and in a meaningful manner." *Id.* (internal quotation omitted)(emphasis added); *Jamison v. State, Dept. of Social Services, Div. of Family Services*, 218 S.W.3d 399, 405 (Mo. banc 2007); *E.H.*, 621 S.W.3d at 687-88. If the right to a hearing is to serve its full purpose, then it must be granted at a time when the deprivation can still be prevented. *Fuentes*, 407 U.S. at 81; *Jamison*, 218 S.W.3d at 408.

In issuing its *ex parte* order, the circuit court ordered Husband not to enter or stay upon the premises wherever Wife may reside. Wife continued to reside at the marital home. The court also ordered Husband to not be within 1000 feet distance of Wife and to not commit or threaten to commit domestic violence, stalking, molesting, sexual assault, or disturbing the peace of Wife wherever Wife may be found. Again, Husband did not challenge the repeated continuances and resulting delay. We simply note that as a result of the repeated continuances, over a four-year period without a showing of good cause, Husband was "temporarily" deprived of his protected interests, and labeled as a stalker, for over four years before he was heard on the matter. We cannot say Husband was heard at a meaningful time given the significant delay.

The length of time to some extent is a triggering mechanism. *Eight Thousand Eight Hundred and Fifty Dollars*, 461 U.S. at 565. "Little can be said on when a delay becomes presumptively improper…." *Id*. Proceedings under the Act are necessarily fact-specific. Our concern is with the parties' procedural due process rights and the intent of the legislature as enacted by statute regarding those rights; we are not establishing a statute of limitations. *See Id*. Obviously, the statute allows for continuances for good cause and short delays may need less justification. However, four-year delays are quite significant. The parties represented at oral argument that it is rather routine to have continuances such as occurred in this case, where the *ex parte* order floats along with the corresponding dissolution case for years, irrespective of the specific time limit for a hearing set out in Section 455.040.1. To extent these repetitive continuances are a matter of routine practice, the circuit court should be mindful of the impact on the responding party and their rights, as well as its authority under Section 455.040.1 and the intent of the statute to proceed expeditiously in these matters.[7]

We turn now to the substantive merits of Husband's appeal.

---

[7] This Court would suggest the following procedure for when a party seeks a full order of protection in conjunction with a dissolution proceeding, to the extent those proceedings are handled in different divisions: hold a hearing on the petition for full order of protection within the statutorily mandated fifteen-day time period, unless the court deems, for good cause shown, that a continuance should be granted, but in all instances within a reasonable amount of time. If the court grants a continuance for good cause shown, that good cause should be indicated and detailed on the record. Should the court issue a full order of protection, the cause can then be transferred to the division handling the dissolution case, if desired and appropriate. The Act provides for modification of the order of protection at any time. Section 455.060.1. The Act also provides for renewals of the full order of protection. Section 455.040.1(2); Section 455.040.1(3). Those motions for modification and/or renewals can be heard and decided as the dissolution case proceeds. A full-order-of-protection proceeding is an independent proceeding, with rights to appeal should the parties contest the court's rulings on either the full order of protection or renewals. Section 455.070 ("all proceedings under sections 455.010 to 455.085 are independent of any proceedings for dissolution of marriage, legal separation, separate maintenance and other actions between the parties…."); Section 455.060.1 ("All full orders of protection shall be final orders and appealable…."). Plus, the circuit court can take judicial notice of the adult-abuse proceeding and the evidence adduced, although not bound by the judgment reached in that proceeding.

12

## Full Order of Protection

The Act provides that any person who has been subjected to domestic violence by a present or former family or household member, or who has been the victim of stalking or sexual assault, may petition the circuit court for relief under the Act.[8] Section 455.020.1. The Act further provides that the court shall issue a full order of protection if the petitioner proves by a preponderance of the evidence that domestic violence, stalking, or sexual assault occurred, and the respondent cannot show their actions were otherwise justified under the law. Section 455.040.1(1). Wife sought an order of protection against Husband for alleged domestic violence and/or stalking. She did not allege sexual assault.

The circuit court issued a full order of protection, finding that Wife had proven allegations of "domestic violence, stalking and/or sexual assault against Husband and that Husband could not show that his actions alleged to constitute abuse were otherwise justified under the law." The circuit court further found that Husband represented a credible threat to the safety of Wife, and that Husband posed a serious danger to the physical or mental health of Wife. The circuit court, in entering its findings and order of protection, simply checked boxes on a pre-printed form.[9] Though afforded the opportunity, and even space on the pre-printed form to do so, the circuit court provided no specific findings.[10]

The circuit court ordered that Husband shall not: (1) communicate with Wife, in any manner or through any medium, and that the use of third parties (including children) to communicate is strictly prohibited; (2) commit or threaten to commit domestic violence,

---

[8] No dispute exists here that Husband qualifies as "family" or "household member." The Act defines those terms as including spouses and former spouses, or any person related by blood or marriage, or persons who are presently residing together or have resided together in the past. Section 455.010(7).

[9] This form is mandated by the Act. Section 455.073.

[10] In particular, the circuit court provided no specific findings on its finding that Husband posed a serious danger to Wife's physical or mental health. Had the circuit court made specific findings, the full order of protection would have been for a mandatory two-to-ten-year period. Section 455.040.1(1).

molesting, stalking, sexual assault, or disturbing the peace of Wife wherever Wife may be found; (3) abuse or threaten to abuse Wife; (4) harass, stalk, or threaten Wife or engage in other conduct that would place Wife in reasonable fear of bodily injury; and (5) use, attempt to use, or threaten to use physical force against Wife that would reasonably cause bodily injury. As noted, the circuit court made the full order of protection effective until January 13, 2023. The court did not order an automatic renewal of the order.

Husband alleges the circuit court committed "reversible error, abused its discretion, and misapplied the law in granting Wife a full order of protection because Wife only testified to two minor incidents and some perceived threats, all of which occurred at least four and a half years prior to trial." Continuing, Husband alleged the circuit court accordingly "abused its discretion in finding that these facts would cause a reasonable person substantial emotional distress and said facts do not support a finding for a full order of protection based on the amount of time that had elapsed between these minor actions and the time of trial."

Again, Wife sought an order of protection against Husband for alleged domestic violence and/or stalking. "Domestic violence" is defined in the Act as "abuse or stalking committed by a family or household member, as such terms are defined in this section." Section 455.010(5). We look first at abuse.

"Abuse" is defined in the Act as including, but not limited to, the occurrence of any of the following acts, attempts or threats: abusing a pet, assault, battery, coercion, harassment, sexual assault, and unlawful imprisonment. Section 455.010(1). The circuit court did not specify which particular act of abuse Husband had committed. Husband on appeal only addressed harassment. Wife did not refute Husband's argument and assertion that harassment was the act in question.[11]

---

[11] Wife spent most of her brief addressing perceived briefing deficiencies on the part of Husband, and urging this Court to dismiss Husband's point. She did not respond with any discussion of the Act or the evidence, other than making a

"Harassment" is defined in the Act as "engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to an adult or child and serves no legitimate purpose." Section 455.010(1)(e). "The course of conduct must be such as would cause a reasonable adult … to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner…" *Id*. Abuse by harassment requires a dual showing: first, the conduct must be such as to cause a reasonable person to suffer substantial emotional distress; and second, the conduct must also actually cause such distress to the petitioner. *K.M.C. v. M.W.M.*, 518 S.W.3d 273, 278 (Mo. App. E.D. 2017). "Substantial emotional distress" means "the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living." *Id*.

Wife also alleged, and the circuit court found, that Husband stalked Wife. "Stalking" is defined in the Act as "when any person purposely engaged in an unwanted course of conduct that causes alarm to another person ... when it is reasonable in that person's situation to have been alarmed by the conduct." Section 455.010(15). Proof of alarm involves both a subjective and an objective component. *N.C. v. Y.Q.L.*, 609 S.W.3d 56, 60 (Mo. App. E.D. 2020). The petitioner must present substantial evidence that the petitioner both subjectively feared physical harm and that a reasonable person under the same circumstances would have feared physical harm. *Id*.

Husband contends the evidence was insufficient to support a full order of protection given the passage of time and the absence of any incidences after September 2017, and because the

---

conclusory statement that "a reading of Husband brief, in which he acknowledges that Wife testified as to threats and physical confrontations adequately supports the position that there was substantial evidence to support the full order of protection." She further asserted that she was "under no obligation to refute an (against the weight of the evidence) analysis which Husband has scorned." Granted, Wife was not required to file a brief in response; but having done so, an argument beyond perceived briefing deficiencies and conclusionary statements would have been helpful to this Court.

evidence prior to September 2017 was scant and vague. He notes that Wife testified to only two incidents of purported physical contact over the course of a marriage that lasted twenty-three years. He notes that though Wife stated he made threats, she only provided general phrases she claims he said. He notes that Wife gave no specificity as to any of the purported statements, and that she gave no context for the purported statements, or to whom they were said. Husband further notes that no evidence exists of any communications between Wife and Husband, let alone any threats, in the four plus years after the *ex parte* order was issued. He argues that bald allegations cannot support an order of protection.

Husband also directs his argument toward the reasonable-person component needed to show harassment and stalking. As seen above, harassment and stalking both include an objective, reasonable-person component. Abuse by harassment requires a showing that the conduct must be such as to cause a reasonable person to suffer substantial emotional distress. *K.M.C.*, 518 S.W.3d at 278; Section 455.010(1)(e). Stalking requires a showing that a reasonable person under the circumstances would have feared physical harm. *N.C.*, 609 S.W.3d at 60. Husband argues that Wife failed to provide substantial evidence to meet these objective tests. Husband claims a reasonable person would not have felt substantial emotional distress or feared physical harm from his actions, so as to warrant the issuance of a full order of protection in 2022.

Moreover, Husband argues the complained-of incidences specified by Wife were justified. He argues that entering onto the marital property to retrieve his belongings does not support wife's order of protection. In the first instance, Wife texted him and told him to get the items from the barn. In the second instance, he notes that Wife was not at home and that he still had a right to be on the property as no *ex parte* order of protection had yet issued. As to the camera on this mother's

16

property, Husband argues that it was lawfully installed and served a legitimate purpose for his mother's safety.

Lastly, Husband argues that even if Wife's evidence would have supported a full order of protection in 2017, the incidences are so remote in time that they should not have been used as a basis to grant a full order of protection in 2022.

In essence, Husband is arguing that the circuit court based its full order of protection on stale evidence. Husband's argument has merit. The last complained-of act by Husband occurred on September 29, 2017. There is nothing in the record showing that anything happened between that date and the trial. There are no complaints of conduct, no alleged violations of the *ex parte* order, no police reports, and no evidence of threats or physical harm or contact leading up to the trial. Wife testified to no events or occurrences after that date. Her testimony at trial consisted solely of events that took place in September of 2017, and at some time earlier in her marriage. The sole exception being her statement that she was "still afraid" of Husband, when asked if she was afraid of him in 2017. A petitioner's fear of the adverse party, by itself, is insufficient to warrant relief under the statute. *Cuda v. Keller*, 236 S.W.3d 87, 91 (Mo. App. W.D. 2007); *see also, Parkhurst v. Parkhurst*, 793 S.W.2d 634, 637 (Mo. App. E.D. 1990). "[T]he potential for abuse of the Act would be heightened by a holding which states that all a petitioner need allege to obtain a protective order is that [they] are afraid of a violent reaction from their spouse upon filing for dissolution." *Parkhurst*, 793 S.W.2d at 637.

This Court does not take the allegations in Wife's petition lightly. However, we note that Wife's concerns and allegations of threats all concerned the pending divorce. Moreover, there are no allegations or proof of threats after September 2017. Wife requested that the circuit court keep

17

Husband from her until her divorce was final. The divorce was granted contemporaneously with the full order of protection.

While divorces by their nature can be contentious and emotional, there must be both a subjective and objective showing to prove harassment and/or stalking. Wife may have subjectively suffered emotional distress or feared harm in 2017. But Husband is correct in his assertion that Wife failed to provide substantial evidence to meet the objective components of harassment and/or stalking. Wife sought protection based on two specific acts of Husband entering onto the marital property, on non-specific claims of stalking, two remote allegations of physical abuse, and generalized allegations of threats that concerned the then-pending divorce. All the complained-of acts occurred in or before September 2017. Again, there is no evidence of any acts or threats by Husband in the four-plus years following September 2017. A reasonable person under these same circumstances would not suffer substantial emotional distress, or fear physical harm from Husband's purported actions some four years ago, such that a full order of protection was needed in 2022. The result here may have been different if the circuit court had held a hearing within a meaningful time, closer to the time of the filing of the petition, as intended by the statute.

It could be that in 2017 Wife presented sufficient evidence to technically prove domestic violence and/or stalking. This Court acknowledges the Act's language mandating the issuance of a full order of protection if the petitioner proves the allegation of domestic violence or stalking by a preponderance of the evidence, and the respondent cannot show that their actions alleged to constitute abuse were otherwise justified under the law. Section 455.040.1(1). Because the remedies afforded a petitioner under the Act consist primarily of injunctive relief, and because the purpose of the Act is to prevent future violence, proof of an act under Section 455.040 carries with it a presumption of immediate and present danger that justifies both the remedy provided and the

18

limit on the circuit court's discretion. *McAlister v. Strohmeyer*, 395 S.W.3d 546, 554 (Mo. App. W.D. 2013). "Once a petitioner has established by a preponderance of the evidence that an act of abuse occurred, a presumption of immediate and present danger arises, justifying the need for injunctive relief." *Id*. If the act was not justified under the law, the legislature has accordingly specified that a full order of protection "shall" issue. However, we presume that in enacting legislation, the legislature did not intend an unreasonable or absurd result but rather intended a logical result. *See, e.g., Dalton Invs., Inc. v. Nooney Co.*, 10 S.W.3d 590, 593 (Mo. App. E.D. 2000). We are doubtful the legislature intended to mandate the issuance of a full order of protection based on years-old evidence.[12] Given the four-year period between the alleged acts of abuse and the issuance of the full order of protection, the evidence and acts upon which an order of protection is based becomes so remote that the presumption of immediate and present danger justifying the need for relief has dissipated.

There is real harm that can result in abusing the Act and its provisions, including the stigma that may attach to a respondent who is labeled a stalker. Thus, trial courts must exercise great care to ensure that sufficient evidence exists to support all elements of the statute before entering a full order of protection. *N.C.*, 609 S.W.3d at 59; *McGrath v. Bowen*, 192 S.W.3d 515, 517 (Mo. App. E.D. 2006). "The Act is not, nor was it intended to be, a solution for minor arguments between adults." *N.C.*, 609 S.W.3d at 59 (internal quotation omitted). Nor is it intended to be used as a shield and sword in dissolutions.

---

[12] Though based in different statutory authority, analogy can be made to other proceedings showing the need for, and consideration of current evidence and circumstances. For example, "when a parent's rights are terminated as a result of a mental condition, the decision must be based on evidence of conduct at the time of the termination, not merely when jurisdiction was taken." *In re Q.A.H.*, 426 S.W.3d 7, 13 (Mo. banc 2014). Further, this Court has reversed the circuit court's judgment in a dissolution proceeding where the judgment was based on out-of-date finances. *See, e.g., Barden v. Barden*, 492 S.W.3d 641, 644 (Mo. App. E.D. 2016). Similarly, "[o]rders concerning custody or visitation should not be made based on stale evidence from long-concluded hearings." *M.P.P. v. R.R.E.*, 490 S.W.3d 781, 784 (Mo. App. E.D. 2016)(quoting *Searcy v. Searcy*, 38 S.W.3d 462, 471 (Mo. App W.D. 2001)).

This Court is authorized to reverse the circuit court's judgment if it is not supported by substantial evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) (standard of review for court-tried case); *N.C.*, 609 S.W.3d at 58 (review of an order of protection is the same as with any court-tried case). "Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case." *N.C.*, 609 S.W.3d at 58 (internal quotation omitted). We acknowledge the circuit court is in a superior position to assess credibility. *Id*. In adult abuse cases, this includes the circuit court's superior ability to evaluate the potential for abuse by the testimony and demeanor of witnesses. *Id*. We also acknowledge that the trial judge "is in the best position to determine the existence of any reasonable apprehension of abuse that a petitioner may have or whether a given respondent appears capable of the feared abuse." *Id*. at 59. The discretion of the circuit court should not often be superseded *Id*. However, this is one of those rare occasions where we will intervene.

Based on the facts and record, we find that Wife did not meet the burden required for a full order of protection. The trier of fact could not reasonably decide that a full order of protection was warranted at this time based on old evidence. Based on the particular facts and record of this case and for above reasons and concerns, we hold that the full order of protection lacks substantial evidence to support its issuance.[13]

We fully acknowledge that an order of protection serves an important function in protecting victims. We are also cognizant that the violent acts that the Act is designed to prevent can occur frequently and, often, without warning or reason. *Parkhurst*, 793 S.W.2d at 637. Wife may certainly petition for a new order of protection, if she believes one is needed.

---

[13] Given our disposition, we need not, and do not reach Husband's Point II, in which he alleges the circuit court erred in granting Wife a full order of protection because the court did not consider the detrimental effect granting the order would have on his opportunity for gainful employment and the stigma and embarrassment of an order being entered against him.

## **Conclusion**

We reverse the circuit court's judgment, and remand the cause with directions for the circuit court to vacate its judgment and full order of protection.

_____
Angela T. Quigless, Judge

Sherri B. Sullivan, J., and
Robert M. Clayton, III, J. concur..